# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### APPEAL No. 25-1090

### UNITED STATES,
Appellee,

### v.

### DIEGO FERNÁNDEZ-SANTOS,
Defendant – Appellant

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

## BRIEF FOR APPELLEE

---

W. Stephen Muldrow
United States Attorney

Juan Carlos Reyes-Ramos
Assistant United States Attorney
Chief, Appellate Division

Maarja T. Luhtaru
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Room 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 772-3940

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................iv

JURISDICTIONAL STATEMENT .......................................................................1

STATEMENT OF THE ISSUE ON APPEAL.......................................................2

STATEMENT OF THE CASE................................................................................3

    A. Fernández is convicted of drug possession in 2011 and, after release, commits a new crime when possessing a gun, ammunition, and drugs while on supervised release..........................3

    B. Fernández again violates his supervised release when he tests positive for cocaine and is found in possession of a pistol, modified rifle, and ammunition of various caliber. .............................4

    C. After hearing from the parties and a witness, the district court finds a Grade A violation due to the machinegun possession and, in considering the seriousness of the breach of trust and it being a second revocation, sentences Fernández to a statutory maximum sentence. ....................................................................................................8

SUMMARY OF THE ARGUMENT....................................................................18

ARGUMENT.........................................................................................................20

The district court imposed a procedurally and substantively reasonable five-year revocation sentence where Fernández, who already had a prior firearm-and-drug-related revocation, now committed a Grade A violation and escalated the gravity of his

violations to machinegun possession and possession of not one but two firearms, plus possession of over 200 rounds of ammunition. ..........20

  Standard of Review ..........................................................................................20

  Discussion .......................................................................................................21

      A. The district court imposed a procedurally reasonable revocation sentence for Fernández.**.................................................**21

          1. Grade A violation for possessing a machinegun does not have a mens rea requirement; in any event, the district court did not clearly err in determining by a preponderance of the evidence that Fernández knew the rifle was a machinegun...........................................................22

          2. The district court was well within its discretion in determining an upward variance was warranted because Fernández breached the court's trust when, after prior firearm-based violation, he possessed machinegun, pistol, and over 200 rounds of ammunition. .........................33

      B. The district court's sentence was also substantively reasonable...........................................................................................49

CONCLUSION ...................................................................................................54

CERTIFICATE OF SERVICE ............................................................................56

## FEDERAL CASES

Esteras v. United States, 145 S. Ct. 2031 (2025) ........................................... 42-48

FDIC v. Sweeney, 136 F.3d 216 (1st Cir. 1998) ................................................... 53

Gall v. United States, 552 U.S. 38 (2007) ..................................................... 21, 33

Greer v. United States, 593 U.S. 503 (2021) ......................................................... 42

Maldonado-Santiago v. Velazquez-Garcia, 821 F.2d 822 (1st Cir. 1987) ...... 53

Rita v. United States, 551 U.S. 338 (2007) ............................................................ 36

United States v. Acevedo-Vázquez, 977 F.3d 85 (1st Cir. 2020) ..................... 49

United States v. Arroyo-Maldonado, 791 F.3d 193 (1st Cir. 2015) ................. 38

United States v. Burghardt, 939 F.3d 397 (1st Cir. 2019) ................................. 32

United States v. Burgos, 133 F.4th 183 (1st Cir. 2025) ............................... 32, 38

United States v. Carmona-Alomar, 109 F.4th 60 (1st Cir. 2024) ..................... 36

United States v. Castillo-Martinez, 16 F.4th 906 (1st Cir. 2021) ..................... 24

United States v. Castillo-Torres, 8 F.4th 68 (1st Cir. 2021) ......................... 52-53

United States v. Colón de Jesús, 831 F.3d 39 (1st Cir. 2016) ................... 49, 51

United States v. Colón-De Jesús, 85 F.4th 15 (1st Cir. 2023) .............. 36, 50, 51

United States v. Colón-Maldonado, 953 F.3d 1 (1st Cir. 2020) ....................... 20

United States v. Corbin, 827 F.Supp.2d 26 (D. Me. 2011) ......................... 53, 54

United States v. Cruz-Olavarria, 919 F.3d 661 (1st Cir. 2019) .......................35

United States v. Del Valle-Rodríguez, 761 F.3d 171 (1st Cir. 2014) ..............33

United States v. Duarte, 246 F.3d 56 (1st Cir. 2001) ..........................................21

United States v. Espinoza-Roque, 26 F.4th 32 (1st Cir. 2022) .........................31

United States v. Fargas-Reyes, 125 F.4th 264 (1st Cir. 2025)...........................38

United States v. Fernández-Santos, 856 F.3d 10 (1st Cir. 2017).......................4

United States v. Figueroa-Gonzalez,

    No. 21-1812, 2022 WL 18862392 (1st Cir. Sept. 14, 2022) ............... 26, 28, 31

United States v. García-Cartegena, 953 F.3d 14 (1st Cir. 2020) ............... 24, 25

United States v. Jiménez-Beltre, 440 F.3d 514 (1st Cir. 2006).........................36

United States v. Martin, 520 F.3d 87 (1st Cir. 2008) .................................. 21, 49

United States v. Martínez-Bristol, 133 F.4th 149 (1st Cir. 2025) ....................23

United States v. Matta-Quinones, 140 F.4th 1 (1st Cir. 2025) ...... 27, 29, 30, 40

United States v. Melendez-Rivera, 139 F.4th 83 (1st Cir. 2025).......................20

United States v. Mendes, 107 F.4th 22 (1st Cir. 2024) ............................... 34, 35

United States v. Menefee, 607 F. App'x 859 (11th Cir. 2015) .........................23

United States v. Menéndez-Montalvo, 88 F.4th 326 (1st Cir. 2023) ........ 25, 45

United States v. Morales-Cortijo, 65 F.4th 30 (1st Cir. 2023) .........................39

United States v. Morales-Vélez, 100 F.4th 334 (1st Cir. 2024).........................50

United States v. Muñoz-Fontanez, 61 F.4th 212 (1st Cir. 2023) .....................31

United States v. Muñoz-González, 145 F.4th 21 (1st Cir. 2025)......... 38, 39, 43

United States v. Nelson, 952 F.2d 180 (8th Cir. 1991) ......................................53

United States v. Newton, 972 F.3d 18 (1st Cir. 2020) ......................................31

United States v. Nieves-Castaño, 480 F.3d 597 (1st Cir. 2007)........... 29, 30, 31

United States v. Polaco-Hance, 103 F.4th 95 (1st Cir. 2024)...........................41

United States v. Pérez-Greaux, 83 F.4th 1 (1st Cir. 2023) ......................... 26, 28

United States v. Rabb, 5 F.4th 95 (1st Cir. 2021) .................................................48

United States v. Ramirez-Ayala, 101 F.4th 80 (1st Cir. 2024)........................47

United States v. Ramirez-Frechel, 23 F.4th 69 (1st Cir. 2022) .........................24

United States v. Reyes-Correa, 81 F.4th 1 (1st Cir. 2023) ................................33

United States v. Rivera-Berríos, 968 F.3d 130 (1st Cir. 2020) .........................41

United States v. Rivera-Carrasquillo, 933 F.3d 33 (1st Cir. 2019)...................29

United States v. Rodríguez-Meléndez, 828 F.3d 35 (1st Cir. 2016) .......... 20-21

United States v. Ruiz-Huertas, 792 F.3d 223 (1st Cir. 2015)...........................49

United States v. Sayer, 916 F.3d 32 (1st Cir. 2019)............................................37

United States v. Shillingstad, 632 F.3d 1031 (8th Cir. 2011)...........................37

United States v. Tanco-Baez, 942 F.3d 7 (1st Cir. 2019) ...................................26

United States v. Tanco-Pizarro, 892 F.3d 472 (1st Cir. 2018) ............. 22, 35, 51

vi

United States v. Torres-Pérez, 22 F.4th 28 (1st Cir. 2021)............. 26, 27, 28, 29

United States v. Vázquez-Méndez, 915 F.3d 85 (1st Cir. 2019) .....................52

United States v. Vázquez-Vázquez, 852 F.3d 62 (1st Cir. 2017) .....................34

United States v. Zannino, 895 F.2d 1 (1st Cir. 1990)........................... 24, 39, 43

Wasman v. United States, 468 U.S. 559 (1984) ...................................................52

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1) .........................................................................................6

18 U.S.C. § 922(o)..........................................................................................6, 26

18 U.S.C. § 3231.................................................................................................1

18 U.S.C. § 3553(a) ...................................................................................... 14, 16

18 U.S.C. § 3553(a)(1) ......................................................................................45

18 U.S.C. § 3553(a)(2)(A) ....................................................... 43, 44, 46, 48

18 U.S.C. § 3553(a)(2)(B) ..................................................................................36

18 U.S.C. § 3553(a)(4)(B) ..................................................................................46

18 U.S.C. § 3583(e) ...................................................................................... 45, 47

18 U.S.C. § 3583(e)(3) .....................................................................................8, 47

18 U.S.C. § 3583(g)......................................................................................47-48

18 U.S.C. § 3742(a) ............................................................................................1

26 U.S.C. § 5845(a) ............................................................... 8, 14, 22, 25

26 U.S.C. § 5845(b) ...................................................................22

28 U.S.C. § 1291 ...........................................................................1

U.S.C. § 5845(a) ........................................................................22

## **FEDERAL RULES**

Fed. R. App. P. 4(b)(1)(A)(i) .......................................................1

Fed. R. Crim. P. 52(b) ...............................................................42

## **UNITED STATES SENTENCING GUIDELINES**

U.S.S.G. § 7B1.1 ........................................................................23

U.S.S.G. § 7B1.1(a) ............................................................. 22, 23

U.S.S.G. § 7B1.1(a)(1) ................................................................8

U.S.S.G. § 7B1.4(a) ............................................................. 14, 37

# JURISDICTIONAL STATEMENT[1]

This is a sentencing appeal from a judgment on revocation entered in Criminal Case No. 14-cr-225 in the District of Puerto Rico. (DE139). The district court had original jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction over this appeal from a final revocation order under 28 U.S.C. § 1291, and over appeals filed by defendants from final revocation sentences under 18 U.S.C. § 3742(a).

The district court sentenced Diego Fernández-Santos on January 14, 2025, and entered the revocation judgment on January 17, 2025. (DE137; DE139). On January 21, 2025, Fernández filed a timely notice of appeal. (DE140); *see* Fed. R. App. P. 4(b)(1)(A)(i).

---

[1] Citations to the record will be as follows: AA (Appellant's Appendix); AB (Appellant's Brief); DE (Docket Entry or Entries in the District of Puerto Rico Criminal Case No. 14-cr-225); DE2 (Docket Entry or Entries in District of Puerto Rico Criminal Case No. 23-cr-63).

Did the district court issue a procedurally and substantively reasonable revocation sentence, when it properly found a Grade A violation, and then thoroughly considered and balanced the appropriate sentencing factors to sentence Fernández to a statutory maximum five-year sentence?

**STATEMENT OF THE CASE**

**A.    Fernández is convicted of drug possession in 2011 and, after release, commits a new crime when possessing a gun, ammunition, and drugs while on supervised release.**

In 2011, Fernández was convicted of possessing cocaine with intent to distribute. (DE108 at 19; DE60 at 6). After his release, Fernández failed to comply with the terms of supervised release, and the police obtained a warrant for his arrest. (DE60 at 4). When arresting Fernández, the officers found drug paraphernalia, cocaine residue, 9mm ammunition, firearm magazines, and a gun. (DE60 at 4). Fernández then pleaded guilty to (1) possessing with intent to distribute a detectable amount of cocaine; (2) possessing a firearm in furtherance of the drug-trafficking crime; and (3) being a convicted felon in possession of a firearm. (DE54; DE60 at 4; DE108 at 17-18).

After the guilty plea, the district court sentenced Fernández to seventy-six months' imprisonment plus a consecutive sentence of twenty-four months for violating the terms of his supervised release. (DE99; DE111 at 6). During the revocation hearing, Fernández stated he really wanted to change his life, to which the court responded: "I hope you do, really. This is the second time I've seen you here. I don't want to see you again." (DE111 at 3).

Fernández appealed and this Court affirmed his sentence. *United States v. Fernández-Santos*, 856 F.3d 10 (1st Cir. 2017). In May 2021, Fernández was released from prison and started his second supervised-release term. (AA22).

**B.** **Fernández again violates his supervised release when he tests positive for cocaine and is found in possession of a pistol, modified rifle, and ammunition of various caliber.**

In February 2023, the Probation Officer notified the court that Fernández had violated his supervised release conditions to: (1) "not commit another federal, state, or local crime," (2) "not possess a firearm, ammunition, destructive device, or any other dangerous weapon," and (3) "not unlawfully possess . . . [or] use [] a controlled substance." (AA22-23). The Probation Officer explained that, in September 2022, Fernández had tested positive for cocaine.[2] (AA23). While he denied using cocaine, the National Lab confirmed the positive drug test. (AA23). Subsequently, the police officers executed an arrest warrant for Fernández and, at the time of

---

[2] The Probation Officer also provided that Fernández had sold one kilogram of cocaine to a Puerto Rico Police officer. (AA23). But the district court did not rely on this factor in finding the violations. (AA139-43).

his arrest, he was found "in possession of a pistol, a rifle, and several ammunitions of different calibers." (AA23).

Namely, the police recovered the following depicted items:





(AA29).

Following his arrest, Fernández knowingly and voluntarily waived the preliminary hearing before a magistrate. (DE129; DE130). The magistrate then found probable cause that Fernández committed the violations and referred the case to the district court for a final revocation hearing. (DE130).

As a result of the arrest, pursuant to a superseding indictment in criminal case 23-063, Fernández was also charged with one count of being a prohibited person in possession of firearms and ammunition under 18 U.S.C. § 922(g)(1) and one count of possession of a machinegun under 18 U.S.C. § 922(o). (DE2 133 at 1-3). The charging documents provided that Fernández knowingly possessed one 9mm Taurus pistol; one modified 7.62 x 39 caliber Guntec USA Rifle; 152 rounds of 9mm ammunition; 88 rounds of 7.62 x 39 caliber ammunition; 12 rounds of .40 caliber ammunition; and two rounds of 5.56 caliber ammunition. (DE2 8 at 1; *see* DE2 133 at 1-2). After multiple days of suppression hearings with testimony under oath, the court suppressed the contents of the black fanny back located in Fernández's backyard (second picture provided above)—which included the 9mm Taurus pistol, two ammunition magazines, and Fernández's identification cards—as inadmissible at trial because they were obtained without a search warrant and no exception applied. (DE2 117 at 7; *see* DE2 110 at 10-19).

Fernández then went to trial. As part of the trial testimony, Agent Pérez testified as an expert in identification of machineguns. (DE218 at 43). He explained that the AK-47 style rifle operated as a machinegun where, on one side of the rifle was a selector lever, which a user could use to switch the weapon between safe, automatic ("as a machinegun"), or semiautomatic mode. (DE218 at 43-45). Each mode was marked with a dash line. (DE218 at 45-46). So, to shoot the rifle as automatic, one would need to push the lever to the middle dash line and then pull and hold the trigger. (DE218 at 45-46). In relation to that testimony, the government then presented a picture of the rifle and the lever. (*See* DE218 at 49-50; DE215 at 2). The Agent explained the picture showed the right side of the rifle in question with the visible selector lever, and that the selector moved from top to bottom and bottom to top, where the middle dash line represented the automatic mode. (DE218 at 50-52). In addition, from the other side of the rifle, there was a plainly visible sear pin holding the automatic sear in place. (DE218 at 44, 46-47, 54).

After multiple days of trial testimony, however, the district court dismissed the case with prejudice due to an issue with an incorrect cell

phone extraction. (AA25; DE2 225 at 2-9). Thereafter, the court scheduled the

final revocation hearing.[3] (DE 134; *see* DE2 225 at 9-10).

## C.  After hearing from the parties and a witness, the district court finds a Grade A violation due to the machinegun possession and, in considering the seriousness of the breach of trust and it being a second revocation, sentences Fernández to a statutory maximum sentence.

Before the final revocation hearing, the government filed an

informative motion requesting a statutory maximum five-year sentence.

(AA27-30). The government explained that Fernández's underlying

conviction included a Class A felony and that the Probation Officer's

allegations include a Grade A violation. (AA30 (citing U.S.S.G. § 7B1.1(a)(1)

(noting Grade A offense as one that is "a federal offense punishable by a

term of imprisonment exceeding one year that involved possession of a

destructive device of a type described in 26 U.S.C. § 5845(a)). Fernández's

Criminal History Category was III and, therefore, his guidelines range was

30 to 37 months. (AA30). But the applicable statutory maximum sentence

was 60 months under 18 U.S.C. § 3583(e)(3). (AA30).

---

[3] The same district court judge has presided over all of Fernández's criminal cases, including the most recent trial, so the judge was familiar with all the trial testimony and submitted exhibits.

The government further explained that, for purposes of the final revocation hearing, the court can consider the previous testimony at trial and at the suppression hearing to find that Fernández committed the new criminal conduct in question by a preponderance of the evidence standard. (AA28). The government then provided the court with some portions of the suppression and trial transcripts for a Fernández's supervised release violation and revocation finding. (AA29-30, 32-86). For example, the government provided testimony from the suppression hearing describing how the police officer found the rifle and ammunition in the closet (AA34, 35-36, 42-46), how the officer observed Fernández throwing a black bag to the ground through the back door (AA39-40), and that the black bag contained a pistol loaded with one magazine, another magazine in the bag, and two identification documents belonging to Fernández (AA47-49).

The government also included trial testimony explaining Fernández's movements in the house at the time of the arrest (AA51, 55-58), and the finding of a rifle, ammunition, magazine, a drum magazine, and cell phone in a blue bag in the closet. (AA52-53, 60-67). In addition, the trial testimony described the firearm as an AK-style 7.62 by 39 caliber rifle that had characteristics of an M70 Yugoslavian rifle, and that the AK-style rifle was

operating as a machinegun. (AA69-70, 73). And the testimony also provided an explanation of the cell phone found in the blue bag, where the phone contained text messages and phone calls linking the phone to Fernández. (AA74-86).

At the revocation hearing, the government explained that it was resting the revocation case on the testimony provided at the suppression hearing and at Fernández's trial, which supported the new criminal conduct allegations. (AA97). Fernández then notified the court that he did not contest the Probation Officer's allegation regarding unlawfully possessing or using a controlled substance based on the positive drug test. (AA95-96). However, he contested the allegations regarding the new criminal conduct and called, as a witness, the Probation Officer. (AA96, 97-98).

The Probation Officer testified that she had visited Fernández about eight times and that Fernández resided on the second floor in a four-bedroom house and that his bedroom was the last room to the left. (AA101-07). She also testified that the first bedroom to the left used to belong to Fernández's nephew, but he had moved out before her last visit. (AA108). At the time of her last visit, the only people living in the house were Fernández and his mother. (AA115).

After the testimony, Fernández argued that the government had not proven that he had engaged in new criminal conduct, when taking into consideration the record before the court, which included the suppression hearing and five days of trial. (AA118-19). Fernández focused on the credibility of agent Luis Gómez, who had conducted Fernández's arrest at his house, claimed that the agent moved around evidence, and asked the court to disregard his testimony in its entirety. (AA119-29). Fernández then argued it was a "mere presence" case and that, additionally, the government had not proven—for Grade A violation purposes—that he knew the firearm was a machinegun. (AA120, 127). In support, he argued that the officer did not see him possessing the rifle in question and that his bedroom was the second room on the left and not the room (first bedroom on the left) where the rifle was located. (AA128). Fernández then argued he only committed a Grade C violation. (AA129).

For its part, the government again stated Fernández committed a Grade A violation and recommended a statutory maximum sentence of 60 months. (AA134). In response to Fernández's contentions, the government provided that the suppressed evidence can be considered for purposes of revocation and that Agent Gómez was consistent in his testimony that he

saw Fernández throw the fanny pack—containing a pistol, ammunition, the magazines, and two of Fernández's IDs—from the back door to the backyard. (AA130). It then discussed the blue backpack in plain view in the bedroom closet containing the rifle machinegun, more than 150 rounds of ammunition, a drum magazine, a rifle magazine, and Fernández's cellphone in the bag next to the gun and ammunition. (AA131-32). So the phone in the bag "clearly tie[d]" the bag and its contents to Fernández. (AA134).

The government then explained that, at the time of the arrest, the only people living in the house were Fernández and his mother, and Fernández had access to the entire house. (AA133). In addition, the room where the machinegun was found (first bedroom on the left) was the room where Fernández led the officers so he could put on a shirt after his arrest. (AA133-34). And, in the pictures, the shirt that came from that bedroom "certainly fit[] him." (AA134). In addition, Fernández's nephew had moved out before Fernández's arrest, so he could have moved bedrooms or used the other bedroom as storage. (AA134). It explained that "one isn't restricted to keeping their belongings in the bedroom that, perhaps, they sleep in." (AA134).

The government then highlighted that Fernández had two prior federal convictions, that his underlying case was also a supervised release violation and that Fernández's behavior had escalated where his underlying case involved a semiautomatic firearm, but he now was arrested with both a semiautomatic firearm and a machinegun. (AA134-35). So the government contended the five-year sentence was appropriate to consider deterrence, Fernández's "reoccurring conduct" and seriousness of "this offense, the violations for committing another . . . crime as well as possessing . . . a machinegun." (AA135). The government explained that Fernández had "little to no respect for the law [and] no respect for his conditions of release" and that a "five-year sentence would be essentially in order to protect the public from future offenses from [Fernández]." (AA135).

Fernández chose not to provide an allocution to the court. (AA139).

After hearing from the parties, the district court revoked Fernández's supervised release term because Fernández violated the conditions of his supervised release by possessing a rifle machinegun, a pistol, ammunition, and drugs as indicated by the Probation Officer's motion and the criminal complaint and indictment in Criminal Case No. 23-63. (AA139, 141). Next, prior to imposing the sentence, the district court calculated Fernández's

advisory guideline range. (AA139-40). The court determined a Grade A violation because the weapon violation involved possession of a machinegun of a type described in 26 U.S.C. § 5845(a) and a Grade B violation based on the possession of controlled substances. (AA140); U.S.S.G. § 7B1.4(a). Based on a criminal history category of III and a Grade A violation, Fernández's advisory guideline range was 30 to 37 months. (AA140). But Fernández's statutory exposure was up to five years' imprisonment. (AA140).

The court thereafter confirmed it had considered the salient 18 U.S.C. § 3553(a) sentencing factors, the Probation Officer's testimony, the parties' arguments, relevant parts of the suppression hearing and trial, and "the seriousness of [] Fernández's violation." (AA58, 67). The court highlighted that Fernández had been unable to comply with the law or his conditions of supervision and was now facing his second revocation proceeding for possessing firearms. (AA141).

The court explained that Fernández's new criminal conduct involved two firearms and ammunition of different caliber. (AA141). One firearm was a .9 mm caliber Taurus pistol loaded with 12 rounds of ammunition and a magazine loaded with 11 rounds of ammunition. (AA141). The court

explained these items were suppressed but that it was able to take these items into consideration in the revocation proceedings. (AA141). The court then stated that the second firearm was a black Guntec USA rifle modified to function fully automatically loaded with a high-capacity magazine with 16 of 7.62 x 39 caliber ammunition. (AA141). In addition, Fernández possessed one .40 caliber drum high-capacity magazine loaded with 129 rounds of ammunition, two rounds of military grade 5.56 caliber ammunition, and 72 rounds of 7.62 x 39 caliber ammunition for assault rifles, for a total of more than 200 rounds of ammunition. (AA141-42). The court then explained that Fernández was charged in Criminal Case No. 23-63 with being a felon in possession of firearms and ammunition, and possession of a machinegun, but that it had dismissed these charges with prejudice. (AA142).

The court then provided that the trial testimony demonstrated that Fernández attempted to flee when officers arrived to execute an arrest warrant and that they then observed a gun handle protruding out of a bag close to the scene of arrest. (AA142-43). That bag contained a rifle, different rounds of ammunition and magazines, and a cellphone. (AA143). The court then found by a preponderance of the evidence that Fernández knew that

the rifle was a machinegun. (AA143). It explained that the rifle "had a visible switch to set the rifle on safety, on semiautomatic firing mode, and on automatic firing mode." (AA143). The court added that Fernández's underlying firearms conviction also shows that Fernández was familiar with weapons. (AA143).

The court then found unpersuasive Fernández's mere presence theory, noting that it was purely speculative that his nephew or his brother may have owned the machinegun, especially when considering that Fernández's cellphone was found in the bag with the machinegun. (AA143-44).

Accordingly, after considering the nature and circumstances of Fernández's violations and "[t]o afford adequate deterrence and to protect the public from additional crimes by [Fernández]," the court determined that an above-guideline sentence was "sufficient but not greater than necessary to comply with purposes set forth in [18 U.S.C. §] 3553(a)." The court then sentenced Fernández to a 60-month term of imprisonment, as the government requested. (AA144).

Fernández objected to the sentence on both procedural and substantive grounds. (AA146). He argued his sentence was procedurally unreasonable because the government had allegedly not proven a Grade A

16

violation, namely, that it purportedly failed to prove that Fernández knew the rifle was a machinegun. (AA146). He also argued that the government did not prove "knowledge of the firearm or the ammunition for the purposes of the Grade B possession of ammunition or firearms." (AA146). And he argued the government did not prove "drug possession insofar as it goes beyond the single positive drug test." (AA146). He then argued "[f]ive years [was] substantively unreasonable for our position is the Grade C violation that the [g]overnment has proven in this case." (AA146).

The court responded. (AA147). It first stated that the government had proven Grade A violation where "knowledge of the characteristics of the machinegun [was] shown because of the switch that was obvious on that machinegun, and the fact that [] Fernández, because of his firearms commissions had knowledge of firearms." (AA147). It then noted that Grade B violation was shown "because to test positive to controlled substances means that one possessed controlled substances." (AA147). The court then stated it was the court's decision that Fernández, "being the only one in addition to his mother, who lived at the residence, had access to the machinegun whether or not it was in his room, and whether or not there were three or four bedrooms in the residence." (AA147). This appeal ensued.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's variant revocation sentence because it is procedurally and substantively reasonable. The district court's sentence was procedurally reasonable where it properly found a Grade A violation, accurately calculated the guidelines range, and thoroughly considered the applicable § 3553(a) factors. No more was needed.

Contrary to Fernández's arguments, the Grade A violation determination did not require a finding that he knew he possessed a machinegun. But even if it did, the district court did not clearly err in finding that Fernández had that knowledge based on the obvious lever on the rifle and his prior firearm conviction. Next, to the extent not waived, the district court did not err, let alone plainly err, in its explanation for the upwardly variant sentence. Nor did it improperly rely on punishment for Fernández's original conviction.

In addition, the district court's sentence was substantively reasonable. The sentencing court considered Fernández's background, the seriousness of the violations, and offered a plausible explanation for its upwardly variant statutory maximum sentence where Fernández, who already had a prior

firearm-and-drug-related revocation, committed a Grade A violation and where his conduct escalated to machinegun possession and possession of over 200 rounds of ammunition. What is more, Fernández now possessed not one but two firearms. Accordingly, Fernández's revocation sentence was both procedurally and substantively reasonable, and this Court should affirm the district court's judgment.

**ARGUMENT**

**The district court imposed a procedurally and substantively reasonable five-year revocation sentence where Fernández, who already had a prior firearm-and-drug-related revocation, now committed a Grade A violation and escalated the gravity of his violations to machinegun possession and possession of not one but two firearms, plus possession of over 200 rounds of ammunition.**

## Standard of Review

Ordinarily, this Court reviews revocation sentences for abuse of discretion. *United States v. Rodríguez-Meléndez*, 828 F.3d 35, 38 (1st Cir. 2016). Under the abuse-of-discretion umbrella, the Court reviews the sentencing court's factual findings for clear error and its legal conclusions de novo. *United States v. Colón-Maldonado*, 953 F.3d 1, 4 (1st Cir. 2020). As a general matter, "[n]o one would describe abuse of discretion as appellant-friendly in a vacuum. Quite the opposite." *United States v. Melendez-Rivera*, 139 F.4th 83, 94 (1st Cir. 2025). This Court "will find an abuse of discretion only when left with a definite conviction that no reasonable person could agree with the judge's decision." *Id.* (internal quotation marks and citations omitted).

When a defendant fails to object in the district court, however, the applicable standard is plain error. *Rodríguez-Meléndez*, 828 F.3d at 38. To prevail on plain error, Fernández must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial

rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quoting *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001)).

## Discussion

### A. The district court imposed a procedurally reasonable revocation sentence for Fernández.

Fernández's revocation sentence is procedurally reasonable. As a first step, this Court evaluates whether the district court committed any procedural errors. *See Gall v. United States*, 552 U.S. 38, 45-46 (2007); *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008). Such errors include "failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. The district court here did not commit any procedural errors. To the contrary. It appropriately determined that Fernández committed a Grade A violation and therefore properly calculated the guideline range, followed the ordinary procedure in reaching its

sentencing decision, and sufficiently explained its upwardly variant revocation sentence. No more was needed.

**1. Grade A violation for possessing a machinegun does not have a mens rea requirement; in any event, the district court did not clearly err in determining by a preponderance of the evidence that Fernández knew the rifle was a machinegun.**

The district court properly concluded Fernández committed a Grade A violation. As a preliminary matter, notwithstanding any arguments to the contrary, there was no knowledge requirement to determine a Grade A violation in this case. To guide the sentencing decision in the revocation hearing, the United States Sentencing Guidelines set three grades of supervised release violations with the most serious being Grade A. *United States v. Tanco-Pizarro*, 892 F.3d 472, 475 (1st Cir. 2018); U.S.S.G. § 7B1.1(a). Grade A violations include "*conduct* constituting [] a federal, state, or local offense punishable by a term of imprisonment exceeding one year" that "involves *possession* of a firearm . . . described in 26 U.S.C. § 5845(a)." U.S.S.G. § 7B1.1(a) (emphasis added). In turn, 26 U.S.C. § 5845(a) includes, as a definition, "a machinegun," and 26 U.S.C. § 5845(b) defines a machinegun as "any weapon which shoots . . . automatically more than one shot, without manual reloading, by a single function of the trigger."

This description, however, does not include a mens rea requirement that Fernández knowingly possessed a firearm amounting to a machinegun. *See* U.S.S.G. § 7B1.1(a) & cmnt. n.4; *cf. United States v. Martínez-Bristol*, 133 F.4th 149, 151-52 (1st Cir. 2025) (affirming Grade A violation finding based on Martínez's machinegun possession with no district court insertion of a knowledge requirement, and noting that "[t]he government's evidence was more than sufficient to establish the gun he had in his possession was a machinegun"). Nor, based on U.S.S.G. § 7B1.1, does there have to be a conviction for a Grade A violation to apply. Rather, the grade of violation is "based on the defendant's actual conduct." *Id*. at cmnt. n.1; s*ee United States v. Menefee*, 607 F. App'x 859, 863-64 (11th Cir. 2015) (per curiam) (finding under U.S.S.G. § 7B1.1, the federally insured status of the banks involved were the subject of the criminal charges, and "had nothing to do with the classification of [the defendant's] actual conduct for purposes of determining the grade violation"). Because the government presented sufficient proof through the trial testimony that Fernández's actual conduct involved the possession of a machinegun, the district court did not err in determining a Grade A violation. (*See* AA55-86).

In his opening brief, Fernández quotes *United States v. García-Cartegena*, 953 F.3d 14, 21 (1st Cir. 2020), in support of his proposition that, "[i]f a Grade A violation is alleged, the government must point to a qualifying offense and show that the accused "*actually committed . . . the crime's elements.*" (AB8). But he provided no developed argumentation as to why this Court should extend *Garcia-Cartagena*—which dealt with the "is a crime of violence" and "is a controlled substance offense" phrases in 7B1.1(a)(1)(A)(i) and (ii)—to the context of 7B1.1(a)(1)(A)(iii). And because Fernández provides only a one-sentence conclusory allegation on this issue, leaving this Court to flesh out the argument on its own, he has waived this claim. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).[4]

In any event, *García-Cartagena* is distinguishable inasmuch as the Court there spoke only about when a violation can be Grade A based on a "crime of violence" or "controlled substance offense." 953 F.3d at 21-22. The Court

---

[4] This issue was immaterial to the district court's decision and the court did not have to reach this question due to its finding that the evidence established 922(o)'s knowledge element. Nevertheless, this Court may affirm on any grounds made apparent by the record, even if the district court did not reach the issue and the government failed to argue that basis. *See United States v. Castillo-Martinez*, 16 F.4th 906, 915 (1st Cir. 2021); *see also United States v. Ramirez-Frechel*, 23 F.4th 69, 73 (1st Cir. 2022).

relied on the fact that application notes 2 and 3 to 7B1.1 reference 4B1.2 for the definition of a crime of violence and controlled substance offense. *Id.* And "the text of [§ 4B1.2(a)] direct[ed the Court] to the elements of the offense, rather than the conduct that this particular defendant engaged in committing." *Id.* at 22 (internal quotation marks and citation omitted). In contrast, 7B1.1's application notes do not reference 4B1.1 for purposes of defining the phrase "firearm or destructive device of a type described in 26 U.S.C. 5845(a)" and instead define the phrase at application note 4. And, unlike the definitions of "crime of violence" and "controlled substance offense" at 4B1.1, the definition in question at 7B1.1's application note 4 does not direct the court to the elements of the federal, state, or local offense. Thus, unlike in *García-Cartagena*, nothing here calls for the court to import a knowledge element onto the language of 7B1.1(a)(1)(A)(iii).[5]

However, even if there were such a knowledge requirement, the district court did not clearly err in finding that Fernández understood the

---

[5] To be sure, the elements-based categorical approach has created much litigation and, as the First Circuit has found, may lead to "counterintuitive" results. *See, e.g.*, *United States v. Menéndez-Montalvo*, 88 F.4th 326, 333 (1st Cir. 2023). The Court should not import that approach onto 7B1.1(1)(A)(iii), especially when, unlike in the case of 7B1.1(a)(1)(A)(i) and (ii), the guideline's text directs otherwise.

automatic nature of the firearm. *United States v. Figueroa-Gonzalez*, No. 21-1812, 2022 WL 18862392, at *2 (1st Cir. Sept. 14, 2022) (addressing a Grade A violation challenge based on knowledge and stating that, "[e]ven assuming, in Defendant's favor, that the government did have to prove that knowledge, the district court did not clearly err in inferring that Defendant understood the automatic nature of the firearm"). For an 18 U.S.C. § 922(o) offense, "the government must prove that the defendant had knowledge of the characteristics that brought the gun within the statutory definition, and not that he had knowledge that the gun was in fact considered a machine gun under federal law." *United States v. Pérez-Greaux*, 83 F.4th 1, 26 (1st Cir. 2023) (cleaned up) (quoting *United States v. Torres-Pérez*, 22 F.4th 28, 32 (1st Cir. 2021)). In addition, § 922(o)'s "requisite mens rea may be established by circumstantial evidence, which includes external indications signaling the nature of the weapon." *United States v. Tanco-Baez*, 942 F.3d 7, 26 (1st Cir. 2019) (internal quotation marks omitted).

Here, the district court appropriately found knowledge under the preponderance of the evidence standard. To begin, in making that finding, the district court explained that the gun "had a *visible* switch to set the rifle on safety, on semiautomatic firing mode, and on automatic firing mode."

(AA143 (emphasis added)). It further explained, in response to Fernández's objection, that the "knowledge of the characteristics of the machinegun [was] shown because of the switch that was *obvious* on that machinegun." (AA147 (emphasis added)). In doing so, the court relied on the trial testimony of Agent Pérez, who explained the characteristics of the gun and the switch, as laid out above.[6] *See United States v. Torres-Pérez*, 22 F.4th 28, 33 (1st Cir. 2021) (upholding, in part, knowledge finding because the gun's alteration was "obvious and visible").

Furthermore, Fernández's personal cellphone was found alongside the modified rifle and ammunition in the blue bag, so it was a reasonable inference that Fernández had been inside the bag and was familiar with its contents. (*See* AA143; AA132 (the government explaining that Fernández's cellphone was next to the gun)). And, as the court noted, the switch on the rifle was externally visible. *See United States v. Matta-Quinones*, 140 F.4th 1, 11-12 (1st Cir. 2025) (upholding the jury's knowledge finding, in part, based

---

[6] The district court judge's language here—who also presided over the trial—closely tracks Agent Pérez's trial testimony about the rifle in question, including the Agent's explanation that the rifle had a lever that took the rifle from safety to semiautomatic firing mode to automatic firing mode. (*Compare* AA143, *with* DE218 at 43-45, 50-52).

on defendant's cellphone in the bag with the machinegun and visible modifications to the gun, which "permit[ted] the inference that Matta was sufficiently familiar with the pistols to know they were capable of automatic fire").

In addition, the blue bag at issue contained a high-capacity loading magazine that was attached to the machinegun with 16 bullets in the magazine. (AA141; *see* AA66 (testifying that the rifle magazine holds a total of 30 rounds of ammunition); DE218 at 35 (same)). The bag also held additional 72 rounds of ammunition of the same caliber. (AA141). Because the magazine could "accommodate additional ammunition" and there was substantial ammunition, it could also be "inferred that [Fernández] knew the [rifle] could fire multiple bullets with one pull of the trigger." *Torres-Pérez*, 22 F.4th at 33; *cf. Pérez-Greaux*, 83 F.4th at 27 (finding that the jury rationally inferred defendant's knowledge of the automatic firing capabilities of gun which he "stored . . . in the same bag as a thirty-round magazine"). What is more, the court highlighted that Fernández had a prior firearms conviction, which shows that he "was familiar with weapons." (AA143, 147); *cf. Figueroa-Gonzalez*, 2022 WL 18862392, at *2 (finding defendant had

knowledge, in part, where "his criminal history demonstrated a familiarity with guns").

Taking the above evidence and the capability of the rifle to fire more than one bullet at a time, the government proved by preponderance of the evidence that Fernández knew that the rifle seized from his residence had the characteristics of a machinegun. *Torres-Pérez*, 22 F.4th at 33; *Matta-Quinones*, 140 F.4th at 10-12. Indeed, the court's findings of fact in this regard do not amount to clear error, nor has Fernández shown that these findings stink like "a 5 week old, unrefrigerated, dead fish." *United States v. Rivera-Carrasquillo*, 933 F.3d 33, 42 (1st Cir. 2019) (internal quotation marks and citation omitted). The court therefore properly applied a Grade A violation.

Fernández's arguments to the contrary are unavailing. He argues that the district court "inferred too much from too little," argues that his case is on a similar plane with *United States v. Nieves-Castaño*, 480 F.3d 597 (1st Cir. 2007), and claims that his mens rea was never established. (AB9-15). But, at the outset, the evidence distinguishes the present case from *Nieves-Castaño*. For example, in *Nieves-Castaño*, the only evidence that the defendant had accessed a bag from which a modified firearm was seized was her statement that she had once "looked in" the bag. *See* 480 F.3d at 599, 601 (stating that

"there was no evidence that one would see, simply by looking into the golf bag, a small mark on the weapon between the fire and safety settings"). In this case, however, Fernández's cellphone was inside the bag in question. So this case is unlike *Nieves-Castaño* and more like *Matta-Quiñones*, where Matta's personal cellphone was found alongside the machineguns in the bag and this Court upheld the jury's knowledge finding, in part, based on that consideration. *See Matta-Quiñones*, 140 F.4th at 11-12.

Likewise, in *Nieves-Castaño*, the only external evidence to indicate that the rifle was a machinegun was a "small mark or hole" that was not easily noticeable. 480 F.3d at 600. Thus, it was unlike the "obvious" and "visible" switch that was present here "to set the rifle on safety, on semiautomatic firing mode, and on automatic firing mode."[7] (AA143, 147). And, unlike

---

[7] Fernández mistakenly infers that it took two experts to determine that the subject rifle could be fired in automatic mode. (AB10, 14). But Agent Escribano testified as an expert in identification of firearms, generally, and interstate nexus of firearms and ammunition. (DE218 at 11-12). He did not state whether the AK-type rifle was a machinegun and testified instead that the gun met the definition of a firearm under federal law. (DE218 at 19). Agent Pérez, on the other hand, testified specifically as an expert in identification of machineguns. (DE218 at 43). Agent Escribano did not testify about the machinegun capabilities simply because he was not asked, and it was not within the scope of his testimony. Fernández's suggestion to the contrary is based on speculation.

*Nieves-Castaño*, where there was no evidence of familiarity with firearms, 480 F.3d at 601, Fernández had a prior firearms conviction, so he was familiar with firearms. *cf. Figueroa-Gonzalez*, 2022 WL 18862392, at *2. Thus, Fernández's *Nieves-Castaño*-based contentions are unavailing.

What is more, the cases Fernández cites in support of his argument deal with proving the element of knowledge beyond a reasonable doubt, which (when preserved) this Court reviews de novo. Whereas here, the district court evaluated the record evidence and properly determined that Fernández had the requisite knowledge by a preponderance of evidence. And this Court reviews that fact-finding for clear error. Yet, as laid out above, Fernández has failed to demonstrate clear error, i.e., that there is "a strong, unyielding belief that a mistake has been made" by the district court's factual determination.[8] *United States v. Newton*, 972 F.3d 18, 20 (1st

---

[8] Fernández also takes issue with the district court statement that the rifle had been "modified to function fully automatically." (AB at 15 (citing AA141)). But he never objected to that statement before the court and, as a result, plain error review applies. *See United States v. Muñoz-Fontanez*, 61 F.4th 212, 214 (1st Cir. 2023). And, because he fails to argue the plain error standard in his opening brief, this specific challenge is waived. *See United States v. Espinoza-Roque*, 26 F.4th 32, 36 (1st Cir. 2022) ("[Defendant] waived [the] claim on appeal by failing to address the governing standard of plain error review in his opening brief."). In any event, there was no error, let alone clear or obvious error, because Agent Pérez testified that, although he could

Cir. 2020) (noting that, under a clear-error review, reversal is warranted only if, after reviewing the record, this Court develops "a strong, unyielding belief that a mistake has been made"). And to the extent Fernández suggests that the Court should draw different inferences from the same evidence, this Court is unable to do so. Indeed, "when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous." *United States v. Burgos*, 133 F.4th 183, 191 (1st Cir. 2025) (internal quotation marks and citation omitted). Thus, even assuming the Court reaches this issue, Fernández has failed to establish clear error in the district court's factfinding.

In sum, this Court should uphold the district court's determination that Fernández committed a Grade A violation. (AA140).

---

not tell whether the rifle was manufactured originally with automatic capability, based on his examination of the rifle, in his opinion the rifle—in its current condition—was converted from a semiautomatic to an automatic mode after the manufacture. (DE218 at 48, 63, 64, 73). Nor has Fernández shown prejudice, i.e., that the outcome would differ but for this statement by the court. *United States v. Burghardt*, 939 F.3d 397, 403 (1st Cir. 2019) (explaining that, under third prong of plain error review, a defendant has to show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different").

**2. The district court was well within its discretion in determining an upward variance was warranted because Fernández breached the court's trust when, after prior firearm-based violation, he possessed machinegun, pistol, and over 200 rounds of ammunition.**

After correctly determining a Grade A violation and a guideline range of 30 to 37 months, the district court appropriately exercised its broad discretion and determined that an upwardly variant five-year sentence was warranted. In its sentencing determination, the district court is required to provide an explanation for the sentence it determines is appropriate; that allows for meaningful appellate review and promotes the perception of fair sentencing. *Gall*, 552 U.S. at 50. When imposing an above-guidelines sentence, as here, the sentencing court "must justify the upward variance." *United States v. Reyes-Correa*, 81 F.4th 1, 10 (1st Cir. 2023) (quoting *United States v. Del Valle-Rodríguez*, 761 F.3d 171, 176 (1st Cir. 2014)). "To successfully justify a variance, the court needs to 'articulate why it believes that the defendant's case differs from the norm.'" *Id.* (cleaned up) (quoting *Del Valle-Rodríguez*, 761 F.3d at 177).

The district court here sufficiently justified the variance and thoroughly explained the basis for its sentencing decision. After hearing from the parties, the district court considered the relevant § 3553(a) factors,

such as "the seriousness of [] Fernández's violation," and that he had been unable to comply with the law or the conditions of supervision imposed on him by the district court where he was facing his second revocation proceeding. (AA14-41); *see United States v. Mendes*, 107 F.4th 22, 30 (1st Cir. 2024) ("The applicable sentencing guidelines do not account for either the number of times a defendant violates the terms of his supervised release or the number of previous revocations of supervised release."). Next, in support of its sentencing consideration, the court discussed Fernández's specific violation conduct, which "involv[ed] two firearms" with one of them a machinegun, "ammunition of different caliber" totaling "more than 200 rounds of ammunition," magazines, and a "one drum high capacity magazine." (AA141-42); *cf. United States v. Vázquez-Vázquez*, 852 F.3d 62, 65, 66 (1st Cir. 2017) (affirming statutory maximum revocation sentence three times greater than the upper end of the guidelines, noting the court adequately explained the sentence with reference to statutory factors where, in part, the court gave a lengthy summary of its factual findings regarding the violations). And the court noted that Fernández's additional violation involved possession of controlled substances. (AA140).

In addition, in support of its sentence, the district court stated that this was Fernández's second revocation proceeding for possessing firearms. (AA141); *see Mendes*, 107 F.4th at 29 ("Repetition of unlawful conduct is often deserving of greater punishment than an isolated instance of such misconduct."). And, as the government pointed out before the court, Fernández's supervised release violation represented "escalation in behavior," given that he now possessed a machinegun and a semiautomatic firearm (unlike his prior supervised release violation/underlying conviction for possessing a semiautomatic firearm).[9] (AA134-35); *see Tanco-Pizarro*, 892 F.3d at 482 (affirming 500% upwardly variant revocation sentence where, inter alia, defendant was charged as a felon in possession "while on supervised release for an earlier gun-related offense"); *United States v. Cruz-Olavarria*, 919 F.3d 661, 663, 665 (1st Cir. 2019) (affirming an upward variance to impose a maximum revocation sentence where, in part, the defendant committed another firearm offense while being on supervised release). Considering that the court followed the government's request for a five-year imprisonment sentence, the government's arguments at sentencing illustrate

---

[9] He then possessed a firearm, three magazines, and 15 rounds of ammunition. (DE108 at 15).

the court's reasoning. *See, e.g.*, *United States v. Jiménez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006), abrogated on other grounds, *Rita v. United States*, 551 U.S. 338 (2007) ("[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did.").

As the court explained, these factors warranted a sentence of the length imposed to ensure "adequate deterrence" and to "protect the public." (AA144); *see* 18 U.S.C. § 3553(a)(2)(B) & (C). So, as the foregoing demonstrates, the district court referenced case-specific facts that took this case outside the heartland of a Grade A violation range, which was based on Fernández's machinegun possession alone. Indeed, this Court has upheld statutory maximum revocation sentences providing similar explanations for the chosen sentence. *See United States v. Carmona-Alomar*, 109 F.4th 60, 76-77 (1st Cir. 2024) (affirming an upwardly variant, statutory maximum term of two years' imprisonment where the revocation had been prompted by a second indictment for the same charges, being a prohibited person in possession of a firearm, and in possession of a machinegun, ammunition, and magazines); *United States v. Colón-De Jesús*, 85 F.4th 15, 26-27 (1st Cir. 2023) (upholding "the imposition of the maximum sentence allowed" where

the defendant "was found, yet again, in possession of firearms, one of which was a machinegun, as well as in possession of over three hundred rounds of ammunition and multiple magazines"); *United States v. Sayer*, 916 F.3d 32, 40 (1st Cir. 2019) (upholding upwardly variant sentence grounded, in part, on defendant's "proclivity upon release towards the type of conduct for which he had been convicted"); *see also United States v. Shillingstad*, 632 F.3d 1031, 1037 (8th Cir. 2011) (noting that a sentencing court is "free to 'weigh the similarity of past offenses to the instant offense, and the possibility that repeated offenses of a similar nature indicate a heightened need for deterrence'"). Notably, the revocation guideline, U.S.S.G. § 7B1.4(a), does not change depending on whether a defendant has had a previous supervised-release revocation, much less whether the previous revocation involved similar conduct. Hence, those factors are not accounted for by that guideline. So the district court did not abuse its discretion when issuing Fernández's sentence. (AA139-44).

On appeal, Fernández argues that the district court imposed a sentence based on unreliable, outside the record facts, did not adequately explain the variance, and sentenced him based on retribution, which was an improper factor to consider. (AB17-27). His contentions do not carry the day.

To start, Fernández raised none of these issues before the district court. (AA146-47). Accordingly, review is for plain error. *United States v. Arroyo-Maldonado*, 791 F.3d 193, 199 (1st Cir. 2015). But Fernández fails to sufficiently argue the four prongs of plain error. "The failure to tie his claim to the exacting plain error standard means he's waived the claim." *United States v. Fargas-Reyes*, 125 F.4th 264, 274 (1st Cir. 2025) (cleaned up). And he cannot revive this waived claim in a reply brief. *See United States v. Muñoz-González*, 145 F.4th 21, 25-26 (1st Cir. 2025).

In any event, Fernández's arguments are unavailing. He first argues that the facts supporting automatic-gun knowledge were never established. (AB18-21). But, as laid out above, the district court did not clearly err in its knowledge determination where it relied on earlier trial testimony regarding an obvious lever on the rifle and Fernández's own history to make that finding. And, at bottom, even where there are "two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous." *Burgos*, 133 F.4th at 191.

Fernández also claims that the district court used outside-the-record assertions to find that the seized firearm was "a black Guntec U.S.A. rifle

modified to function fully automatically."[10] (AB20). But he did not object to that finding before the district court and has failed to sufficiently argue for, let alone demonstrate that he has met all four prongs of plain error review. (AB20 & n.2). So this argument should be considered waived. *Muñoz-González*, 145 F.4th at 25-26; *Zannino*, 895 F.2d at 17. In any event, at a minimum, he has failed to explain how that statement affected his substantial rights where the make and model of the gun was not central to the court's analysis in issuing Fernández's revocation sentence. *Cf. United States v. Morales-Cortijo*, 65 F.4th 30, 35 n.6 (1st Cir. 2023) (noting that, even assuming misstatement of facts, "Morales cannot show a different outcome"). Rather, in issuing the sentence, the district court focused on the fact that the rifle functioned as a machinegun, that Fernández possessed an additional firearm, around 200 rounds of ammunition, magazines, a drum magazine, and that it was his second revocation for a firearms possession. (AA140-144). Contrary to Fernández's contentions, the court provided these

---

[10] The indictment filed with the district court bore the same description for this weapon. (DE133 at 2). Based on the subsequent trial testimony, the rifle had "the characteristics of an M70 Yugoslavian rifle" (DE218 at 12), but the expert was unable to identify the manufacturer of the rifle. (DE218 at 30-31). And as to Fernández's modification claim, the government addressed that claim in its footnote 6 above.

as central reasons for its sentence, and Fernández does not challenge these findings. (*See* AB19). Thus, this argument by Fernández does not dictate a contrary result.

By the same token, Fernández contends that the trial testimony did not reveal something outwardly visible to a lay observer that the rifle was capable of automatic fire. (AB20). Again, as explained above, the trial testimony established that the rifle had a visible lever through which the user could switch the gun from safety to semiautomatic to automatic mode. (DE218 at 43-45, 50-52). And the district court's statement in that regard tracked the expert's trial testimony. (*Compare* AA143, *with* DE218 at 43-45, 50-52). To the extent Fernández claims that there was nothing apparent for a lay observer, this Court has recognized that "the government is not required to present evidence that a layperson (rather than an expert) could draw the conclusion, simply by looking at the firearm, that it had been modified to a machinegun, where other evidence reasonably permits an inference that the defendant understood the purpose of the modification." *Matta-Quinones*, 140 F.4th at 11-12 (finding that the visibility of the modifications and proximity of Matta's cell phone to the altered weapon and extended magazines permitted such inference).

Next, Fernández argues that the district court did not adequately explain or individualize its upward variance. (AB21-24). But, as thoroughly explained above, the record does not bear that out. Fernández here fails to recognize the court's discussion of the aspects of the violation that made it serious—possessing a machinegun, another firearm, more than 200 rounds of ammunition, magazines, and high-capacity drum magazine after another firearms revocation violation—and the court's subsequent discretionary determination that these factors called for an upwardly variant sentence to afford adequate deterrence and to protect the public. (AA140-44); *cf. United States v. Polaco-Hance*, 103 F.4th 95, 104 (1st Cir. 2024) ("Under our precedent, a sentencing court may consider both the amount of ammunition and the number of high-capacity magazines [there, 111 rounds and four extended magazines] as aggravating factors not already accounted for by the guidelines if they exceed what is consistent with simple possession."). And this case is unlike *United States v. Rivera-Berríos*, 968 F.3d 130 (1st Cir. 2020), which Fernández cites in support (AB24), where, for starters, the defendant there was a first-time offender, but Fernández was a convicted felon when he possessed the ammunition, and no amount of ammunition was consistent with that status.

Fernández subsequently argues that the district court sentenced him based on retribution, which was an improper factor to consider, and relies on the recent Supreme Court decision in *Esteras v. United States*, 145 S. Ct. 2031 (2025). (AB25-27). His claim lacks merit.

As a preliminary matter, as stated above, Fernández waived this claim because he did not raise it before the district court and fails to demonstrate he met the four prongs of plain error. (AB25-26). Fernández's attempt to avoid plain-error review runs afoul of Supreme Court precedent. He argues that he is exempt from plain-error review because it would have been allegedly futile to lodge a contemporaneous objection at the revocation hearing since "a 'solid wall of circuit court authority' would have prevented the district court from ruling in his favor." (AB25-26). The Supreme Court, however, has rejected that argument and held that there is no futility exception to Fed. R. Crim. P. 52(b). *See Greer v. United States*, 593 U.S. 503, 511 (2021) (rejecting petitioner's argument that he was exempt from plain-error review because a "uniform wall of precedent" would have made it "futile for him to contemporaneously object," and holding that his "proposed futility exception lacks any support in the text of the Federal Rules of Criminal Procedure or in this Court's precedents").

By the same token, *Esteras* makes clear that a forfeited objection to a revocation sentence is reviewed, if at all, only for plain error. There, the Court explained that, if the defendant failed to object on grounds that the district court relied on an impermissible factor, plain-error review applies, and the sentence must be affirmed unless it is clear or obvious that the district court relied on an impermissible factor. *Esteras*, 145 S. Ct. at 2045. Here, Fernández forfeited any objection on those grounds. Namely, before the district court, Fernández failed to object to any of the factors, permissible or otherwise, let alone any consideration of 18 U.S.C. § 3553(a)(2)(A) factor in fashioning his sentence. (AA146-47). Thus, plain error review applies. Yet he fails to sufficiently argue for, let alone demonstrate that he has met all four prongs of plain error review. (AB26). While he alleges in conclusory fashion that the alleged error meets plain-error review's second prong (clear or obvious error), he entirely fails to address plain-error review's third and fourth prongs. (AB26-27). So his argument should be considered waived. *See Muñoz-González*, 145 F.4th at 25-26; *Zannino*, 895 F.2d at 17.

In any event, Fernández has not established any error, let alone plain error. The Supreme Court's decision in *Esteras* prohibits courts from relying on 18 U.S.C. § 3553(a)(2)(A) to further punish a defendant for his original

offense when imposing a later sentence for a supervised release violation. 145 S. Ct. at 2040-45. But even after *Esteras*, courts can properly consider the violation conduct when imposing a sanction for the defendant's breach of trust. And that is what happened here.

Fernández claims that the district court improperly invoked 18 U.S.C. § 3553(a)(2)(A) when it took into consideration the seriousness of his violation. (AB25). This claim misses the mark. To start, the district court here did not cite 18 U.S.C. § 3553(a)(2)(A) in its consideration nor did it reference retribution or punishment more generally. What is more, the seriousness of the offense under § 3553(a)(2)(A) as defined by *Esteras* does not cover supervised release violation conduct. Indeed, *Esteras* specifically defined "offense" under 18 U.S.C. § 3553(a)(2)(A) to mean "the underlying criminal conviction" for which the term of supervised release has been imposed and not the violation conduct. *Esteras*, 145 S. Ct. at 2040 & n.5. So, notwithstanding any arguments to the contrary, the district court did not rely on an improper factor, as *Esteras* prohibits, but rather considered the seriousness of Fernández's violation in sanctioning his breach of trust. Fernández does not argue, and there is no indication in the record, that the

district court sought to exact retribution for his original crime. As a result, the district court committed no error, let alone plain error.

Contrary to Fernández's contention, *Esteras* did not preclude district court's from considering the seriousness of a defendant's supervised-release violations. As this Court recognized in *United States v. Menéndez-Montalvo*, that consideration is part of the "nature and circumstances of the offense and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), which is a valid sentencing factor upon revocation of supervised release. 88 F.4th 326, 334 (1st Cir. 2023); *see also* 18 U.S.C. § 3583(e). "Accordingly, when making its final sentencing calculus, [a] district court has 'wide discretion' to weigh the 'serious nature of [the supervised-release violation] offense and the circumstances surrounding it." *Id*. But even assuming *Esteras* prohibited the consideration of the seriousness of the violation for retributive purposes—which it did not—the Court there explained that considering the offense may be relevant to other required sentencing factors. *See Esteras*, 145 S. Ct. at 2043. Here, the record shows that the district court weighed all appropriate sentencing factors including the nature and circumstances of Fernández's supervised-release violations, his history and characteristics, and protecting the public from Fernández's further crimes as well as deterrence and

45

sanctioned the breach of trust that his supervised release violation—recurrent possession of firearms, as well as possession of magazines and over 200 rounds of ammunition—represented. (AA140-44). As *Esteras* indicated, its requirement—that courts "not consider the retributive purpose of § 3553(a)(2)(A) before revoking supervised release"—is not offended where "a stray reference to a § 3553(a)(2)(A) factor was intended to bear on another § 3553(a) factor." *Esteras*, 145 S. Ct. at 2045. Therefore, Fernández has failed to show any error, let alone show it was "clear or obvious that the district court actually relied on § 3553(a)(2)(A)." *Id.* (internal quotation marks omitted).

Moreover, courts are required under 18 U.S.C. § 3553(a)(4)(B) and (a)(5) to consider policy statements issued by the Sentencing Commission. *See Esteras*, 145 S. Ct. at 2040 n.5. The Sentencing Commission has adopted the view that "the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision." *Id.* (citing United States Sentencing Commission, Guidelines Manual ch. 7, pt. A, intro. 3(b) (Nov. 2024)). That policy statement specifically directs courts to account for the seriousness of the violation and the criminal history of the violator when sanctioning the breach of trust that

a supervised release violation represents. *Id.* And that makes sense because, to evaluate whether incarceration is necessary for public protection and deterrence, a court must be able to consider the violation's seriousness.

In support of his claim, Fernández also cites *Esteras*'s concurrence. (AB26). To be sure, while the concurrence in *Esteras* would adopt an approach that disavows punishing supervised release conduct, *Esteras*, 145 S. Ct. at 2046, the majority expressly declined to extend its holding to reach violation conduct. *Id.* at 2040 n.5; *see also id.* at 2045 (noting an error occurs only if the district court "considers the need to exact retribution for the defendant's original criminal offense"). So the Supreme Court's *Esteras* decision did not overrule this Court's precedent permitting district judges to consider the violation conduct's seriousness when sanctioning a breach of trust. *See e.g., United States v. Ramirez-Ayala*, 101 F.4th 80, 89 (1st Cir. 2024) (upholding the revocation sentence where the district court had relied, in part, on the seriousness of the violation).

What is more, Fernández's claim fails for yet another reason. Because Fernández's violations included gun possession (AA23, 139-40), revocation of his supervised release was not discretionary under Section 3583(e)(3), but was instead mandatory under 18 U.S.C. § 3583(g). Unlike Section 3583(e),

"Section 3583(g) does not specify which factors apply when a court determines the length of the defendant's postrevocation term of imprisonment." *Esteras*, 145 S. Ct. at 2044. And in *Esteras*, the Supreme Court again expressly did not resolve whether Section 3553(a)(2)(A) is a permissible (or even a required) factor for mandatory revocations under Section 3583(g). *Id.* Thus, even had the district court expressly referred to just punishment for the offense of conviction (it did not), it would not have erred, much less plainly erred. *See United States v. Rabb*, 5 F.4th 95, 101 (1st Cir. 2021) (noting "the error must be 'indisputable' in light of controlling law").

Accordingly, Fernández fails to establish that the district court impermissibly considered § 3553(a)(2)(A). He cites only to the district court's consideration of the seriousness of his violation—not of his underlying conviction—but the district court permissibly considered the seriousness of his violation when sanctioning the breach of trust. *See Esteras*, 145 S. Ct. at 2045 (explaining that on plain-error review, a defendant will not prevail "unless it is clear or obvious that the district court actually relied on § 3553(a)(2)(A)—because it did so either expressly or by unmistakable implication") (quotation marks omitted). Thus, Fernández's arguments lack merit.

**B. The district court's sentence was also substantively reasonable.**

The district court also imposed a substantively reasonable sentence. A sentence is substantively reasonable "so long as it rests on a 'plausible sentencing rationale' and embodies a 'defensible result.'" *United States v. Ruiz-Huertas*, 792 F.3d 223, 228 (1st Cir. 2015) (quoting *United States v. Martin*, 520 F.3d 87, 96 (1st Cir. 2008)). This Court has explained that the universe of substantively reasonable sentences has "expansive boundaries." *United States v. Acevedo-Vázquez*, 977 F.3d 85, 89 (1st Cir. 2020). And it affords "considerable deference" to the district court's judgment in assessing the substantive reasonableness of a sentence. *United States v. Colón de Jesús*, 831 F.3d 39, 42 (1st Cir. 2016).

At the outset, Fernández's challenges to the substantive reasonableness of his sentence are waived. On appeal, he argues that the district court's sentence is substantively unreasonable because it failed to give case-specific explanation for the variance and relied on off-limits retribution factor. (AB28). But before the district court he objected claiming only that "[f]ive years is substantively unreasonable for our position is the Grade C violation that the Government has proven in this case." (AA146). Thus, these specific appellate claims are unpreserved and are reviewed for

plain error. *Colón-De Jesús*, 85 F.4th at 25 ("Colón did not raise before the district court any of the specific, substantive challenges that he now argues on appeal, thus they are unpreserved and plain error review applies."). "And, because he failed to argue the plain error standard in his opening brief, his specific challenges to the substantive reasonableness of his sentence are waived." *Id.*

In any event, the district court's sentence rested on a plausible sentencing rationale and embodied a defensible result, and Fernández's contentions to the contrary are unavailing. As explained above, the district court here provided a plausible rationale for its upwardly variant sentence. *See United States v. Morales-Vélez*, 100 F.4th 334, 346 (1st Cir. 2024) ("[A]n adequate explanation for an upwardly variant sentence and the plausible rationale element of the test for substantive reasonableness are almost always two sides of the same coin.") (citations and internal quotation marks omitted). Namely, the record makes clear that the district court adequately explained why it varied upward—it relied on the seriousness of the breach of trust, considering the § 3553(a) factors and Fernández's specific supervised release violation conduct—being in possession of a machinegun,

another pistol, magazines, including a high-capacity drum magazine, and over 200 rounds of ammunition. (AA141-43).

In support of its sentence, the district court also pointed to the fact that Fernández's supervised release violation was his second violation for possessing firearms, where his conduct had escalated from possessing a firearm to possessing a machinegun and another firearm. (AA141); *Colón-De Jesús*, 85 F.4th at 26-27 (holding that a similar sentencing rationale was plausible). And, for the same reasons, this result is also defensible, falling within the broad range of acceptable sentences. *Id; see Tanco-Pizarro*, 892 F.3d at 484 ("[W]hile stiff, the sentence's length—60 months . . . right at the statutory maximum—is defensible [and] even a stiff sentence may come within the universe of reasonable sentences.") (internal quotation marks and citation omitted).

Finally, to the extent Fernández claims the court impermissibly relied on the retribution factors, which contributed to the substantive unreasonableness of the sentence (AB28), this claim lacks merit as laid out above. Therefore, notwithstanding any arguments to the contrary, the court-imposed 60-month revocation sentence was substantively reasonable. *See Colón-de Jesús*, 831 F.3d at 42 (noting the Court affords "considerable

deference" to the district court's judgment in assessing the substantive reasonableness of a sentence.).

*    *    *    *

Fernández also argues the case should be remanded to another judge. (AB28-30). As explained above, this case should not be remanded. But if it were, it should not go to a new judge. Fernández's argument for why a new judge should handle the case would apply in any criminal resentencing. Beyond being wasteful and inefficient, it would give the impression that sentencing judges lack the maturity to reevaluate a case on remand. But the Supreme Court has rejected the idea that every resentencing on remand is vindictive or involves malintent. *Wasman v. United States*, 468 U.S. 559, 569-70 (1984). And this Court explained that while it used to remand to different judges for resentencing, that is no longer the practice in the First Circuit. *United States v. Vázquez-Méndez*, 915 F.3d 85, 88 (1st Cir. 2019).

The "[r]equests for a new judge on remand are granted only in very unusual cases such as where there is reason to think that a judge will base sentencing determinations on unreliable or inaccurate information or where the original judge displayed a deep-seated favoritism or antagonism that would make fair judgment impossible." *United States v. Castillo-Torres*,

8 F.4th 68, 73 (1st Cir. 2021) (internal quotation marks and citations omitted).

"Absent proof of personal bias requiring recusation, the appellate courts will nevertheless order reassignment of a case upon remand where necessary to preserve the appearance of fairness." *Maldonado-Santiago v. Velazquez-Garcia*, 821 F.2d 822, 832 (1st Cir. 1987). This is not such an unusual case. *Castillo-Torres*, 8 F.4th at 73 ("On this record, we see no reason why the same judge could not entirely put to one side the unsupported allegations just as would any other judge to whom the case might be reassigned.").

What is more, judges may form views based on facts introduced or events occurring during current or prior proceedings. *FDIC v. Sweeney*, 136 F.3d 216, 219 (1st Cir. 1998); *see United States v. Nelson*, 952 F.2d 180, 181 (8th Cir. 1991) (noting sentencing judge's comments about drug dealers in general did not show pervasive personal bias against defendant who pleaded guilty to distributing heroin); *see also United States v. Corbin*, 827 F.Supp.2d 26, 31-32 (D. Me. 2011) (finding judge's statements to newspaper about dangers of drug trafficking across Canadian border and of the illegal drug methamphetamine did not warrant recusal in trial for charges of possession of methamphetamine, marijuana, and firearm). "It should come as no surprise that a federal judge who routinely sentences

people for serious federal violations, ranging from the possession of child pornography to bank robbery . . . disapproves of the commission of serious federal felonies. It does not follow that to disapprove of crime means that a judge is incapable of being fair and impartial in determining whether a person committed one." *Id.* at 32. Therefore, even in the event of a remand, a different district court judge is not required.

**CONCLUSION**

For the foregoing reasons and authorities, this Court should affirm the district court's sentence and judgment.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this day of September 18, 2025.

W. STEPHEN MULDROW
United States Attorney

Juan Carlos Reyes-Ramos
Assistant United States Attorney
Chief, Appellate Division

/s/ Maarja T. Luhtaru
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Room 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 772-3940

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

### Certificate of Compliance with Rule 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in Fed. R. AA. 32(a)(7)(B) because:

   ☑ the brief contains <u>10,719</u> words, excluding the parts of the brief exempted under Fed. R. App. P. 32(f), *or*

   ☐ the brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because:

   ☑ the brief has been prepared in a proportionally spaced typeface and, except for emphases, in a plain, roman style using <u>Book Antiqua</u> in <u>14 point</u>, *or*

   ☐ the brief has been prepared in a monospaced typeface using _____ with _____.


Dated: September 18, 2025          /s/ Maarja T. Luhtaru
                                   Assistant United States Attorney

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on September 18, 2025, I filed the above brief

with the Clerk of Court using the Court's electronic-filing system, which sent

a notification of the filing to the appellant through his attorney of record, a

registered user of the system.

/s/ Maarja T. Luhtaru
Assistant United States Attorney