# United States Court of Appeals for the First Circuit

---

**UNITED STATES,**
*Appellee,*

v.

**DIEGO FERNÁNDEZ-SANTOS,**
*Defendant - Appellant.*

---

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 14-cr-225-FAB
Hon. Francisco A. Besosa, U.S. Senior District Judge

---

## APPELLANT'S REPLY BRIEF

---

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico
241 F.D. Roosevelt Ave.
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Kevin_Lerman@fd.org

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appeals Section

**KEVIN E. LERMAN**
Assistant Federal Public Defender

*Attorneys for Defendant-Appellant*
**DIEGO FERNÁNDEZ-SANTOS**

# Contents

Authorities ..................................................................................................... iii

Arguments ....................................................................................................... 1

I.   Response to Appellee's Disagreement Over Whether the Record of
     the Contested Revocation Hearing Supported a Grade A
     Determination.......................................................................................... 1

     *Introduction* ............................................................................................. 1

     A.   The government's argument regarding machine gun
          knowledge—which relies on disputed extra-record evidence not
          adduced at the hearing—lacks merit. ................................................. 2

          1.   This Court must reject the government's allegation that
               an unintroduced December 12 trial transcript supports
               the court's Grade A determination. ..................................2

               a.   To use the December 12 transcript would violate party
                    presentation, due process, and Rule 32.1............................ 2

               b.   And since the government's selective view of the December
                    12 transcript does not point to reliable evidence, this Court
                    can't affirm under the affirm-on-any-basis-apparent-from-
                    the-record doctrine. ........................................................... 8

               c.   Utilizing the never-presented December 12 transcript on
                    appeal would promote unsound policy, undermine
                    separation of powers, and undermine fairness choices by
                    district court prosecutors. ................................................. 11

               d.   The government's remaining Grade A-classification
                    arguments are meritless. .................................................... 15

     B.   The government's argument that it should have been excused
          from proving machine-gun mens rea lacks merit. .............................. 16

          1.   The government's new-on-appeal mens rea argument is
               waived or forfeited. ............................................................ 17

i

2. As in § 5861 and § 924(c)(1)(B)(ii), the possession of an NFA machine gun under § 7B1.1(a)(1) requires that a person know the gun is a machine gun. ........................... 21

II. Response to Government Brief's Denial of Procedural Error. ..................... 23

   *Introduction* .............................................................................. 23

   A. The government claims the Court's five-year upwardly variant statutory maximum sentence was free of *Esteras* error, but that claim lacks merit. ........................................................... 23

   B. This Court need not insist that a defendant make a futile objection to review a sentencing error for abuse of discretion, but if it does, the plain *Esteras* error warrants vacatur ...................... 25

CONCLUSION ...................................................................................... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# Authorities

**U.S. Supreme Court Authorities**

*Elonis v. United States*,
  575 U.S. 723 (2015) ...................................................................... 22
*Esteras v. United States*,
  145 S. Ct. 2031 (2025) ......................................................... *passim*
*Greenlaw v. United States*,
  554 U.S. 237 (2008) ........................................................................5
*Greer v. United States*,
  593 U.S. 503 (2021) ......................................................................25
*Kontrick v. Ryan*,
  540 U.S. 443 (2004) ...................................................................... 17
*Morrissey v. Brewer*,
  408 U.S. 471 (1972) ........................................................................ 6
*Rosales-Mireles v. United States*,
  585 U.S. 129 (2018) ......................................................................27
*Staples v. United States*,
  511 U.S. 600 (1994) ................................................................ 18, 21
*United States v. O'Brien*,
  560 U.S. 218 (2010) ...................................................................... 22
*United States v. Sineneng-Smith*,
  590 U.S. 371 (2020) ........................................................................5

**U.S. Appellate Court Authorities**

*Asbill v. Hous. Auth. of Choctaw Nation*,
  726 F.2d 1499 (10th Cir. 1984) ....................................................26
*Lawless v. Town of Freetown*,
  63 F.4th 61 (1st Cir. 2023) ........................................................... 17
*Martineau v. Perrin*,
  601 F.2d 1201 (1st Cir. 1979) ........................................................ 6
*Martone v. United States*,
  435 F.2d 609 (1st Cir. 1970) ........................................................25
*Reyes-García v. Rodríguez & Del Valle, Inc.*,
  82 F.3d 11 (1st Cir. 1996) ............................................................ 17
*United States v. Chéveres-Morales*,
  83 F.4th 34 (1st Cir. 2023) ...................................................5, 7, 13

*United States v. Crooker*,
    688 F.3d 1 (1st Cir. 2012) ............................................... 6

*United States v. Cruz*,
    120 F.3d 1 (1st Cir. 1997) (en banc) ........................................ 4, 5

*United States v. Frederickson*,
    988 F.3d 76 (1st Cir. 2021) ............................................... 3, 4

*United States v. Galindo-Serrano*,
    925 F.3d 40 (1st Cir. 2019) ............................................... 17

*United States v. García-Oquendo*,
    144 F.4th 66 (1st Cir. 2025) ............................................... 6, 8

*United States v. López-Peña*,
    912 F.2d 1542 (1st Cir. 1989) ............................................... 25

*United States v. Martínez-Bristol*,
    133 F.4th 149 (1st Cir. 2025) ............................................... 18, 19, 20

*United States v. Matta-Quiñones*,
    140 F.4th 1 (1st Cir. 2025) ............................................... 15

*United States v. Mayfield*,
    134 F.4th 1101 (10th Cir. 2025) ............................................... 26

*United States v. Nieves-Castaño*,
    480 F.3d 597 (1st Cir. 2007) ............................................... 16, 18

*United States v. Nieves-Meléndez*,
    58 F.4th 569 (1st Cir. 2023) ............................................... 18

*United States v. Rodríguez*,
    919 F.3d 629 (1st Cir. 2019) ............................................... 27

*United States v. Valdez*,
    88 F.4th 334 (1st Cir. 2023) ............................................... 18

*United States v. Wickware*,
    136 F.4th 591 (5th Cir. 2025) ............................................... 23

*United States v. Yeje-Cabrera*,
    430 F.3d 1 (1st Cir. 2005) ............................................... 12

*United States v. Zannino*,
    895 F.2d 1 (1st Cir. 1990) ............................................... 18

## U.S. Statutes

18 U.S.C. § 3553(a)(2)(A) ............................................... 23, 24, 27
18 U.S.C. § 924(c)(1)(B)(ii) ............................................... 21, 22
26 U.S.C. § 5845(b) ............................................... 1, 21
26 U.S.C. § 5861 ............................................... 21, 22

**U.S. SENTENCING GUIDELINES**

U.S.S.G. § 7B1.1(a)(1) ..................................................................... 21, 22

**FEDERAL RULES OF PROCEDURE**

Fed. R. Crim. P. 28(a)(6) ........................................................................3
Fed. R. Crim. P. 28(b) ............................................................................3
Fed. R. Crim. P. 32.1(b)(2) .................................................................... 6

**OTHER SOURCES**

Peter W. Martin, INTRODUCTION TO BASIC LEGAL CITATION (online ed.
    2020) .............................................................................................. 19

# United States Court of Appeals for the First Circuit

---

**UNITED STATES,**
*Appellee,*

v.

**DIEGO FERNÁNDEZ-SANTOS,**
*Defendant - Appellant.*

---

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 14-cr-225-FAB
Hon. Francisco A. Besosa, U.S. Senior District Judge

---

## APPELLANT'S REPLY BRIEF

---

TO THE HONORABLE COURT:

The defendant-appellant, Diego Fernández-Santos, represented by the Federal Public Defender for the District of Puerto Rico, through undersigned counsel, respectfully states and prays:

I.     **Response to Appellee's Disagreement Over Whether the Record of the Contested Revocation Hearing Supported a Grade A Determination.**

*Introduction*

The government's brief argues there was no error in the revocation grading for two reasons. First, at G25-G32,[2] it alleges that the record contains sufficient evidence of machine gun mens rea. The government's argument, however, lacks merit as it depends on evidence never introduced or relied on upon at the revocation hearing. Second, at G22-G25, the government alleges it didn't have to prove mens rea because 26 U.S.C. § 5845(b), the automatic gun prohibition statute cited by Chapter 7 of the Sentencing Guidelines, "does not include a mens rea requirement that Fernández knowingly possessed a firearm amounting to a machinegun." G22. Since it was undisputed below that mens rea was element of a machine gun-based Grade A offense, this new challenge cannot be raised on appeal. In any case, it's settled that § 5845(b) offense require machine gun knowledge. For the proposition that Chapter 7 would incorporate § 5845(b) offenses into its Grade A section (the

---

[1] Mr. Fernández hereby replies to salient points in the government's brief. For any argument not expressly addressed, he relies on the opening brief for all purposes and does not concede nor waive any argument or issue asserted in his brief.

[2] Citation are to: Appellant's Brief ("AB___"); Government Brief ("G___"); Appendix ("A___"); Addendum to Reply Brief ("ADR___").

harshest possible new offense violation) while sub silentio deleting an element of the federal machine gun statute finds no support in the law.

**A. The government's argument regarding machine gun knowledge—which relies on disputed extra-record evidence not adduced at the hearing—lacks merit.**

**1. This Court must reject the government's allegation that an unintroduced December 12 trial transcript supports the court's Grade A determination.**

Applicable law prevents use of witness statements from the December 12, 2024 hearing that's selectively cited in the red brief. The following reasons prevent its use in this Court's analysis.

**a. To use the December 12 transcript would violate party presentation, due process, and Rule 32.1.**

Were this Court to include the December 12 transcript in its appellate review, that would violate party presentation, due process, and Rule 32.1. We start with the government's proffer on appeal. The government advocates that the Court should look not just to the transcripts and exhibits that the United States utilized as proof at the January 14, 2025 contested hearing. A27-A91. Instead, it leans on selective citations to a separate transcript from a December 12, 2024 hearing during Mr. Fernández's gun-possession trial, *i.e.*, the trial that ended in dismissal. A25-A26.

Starting from its statement of the case,[3] at G7, the government relies on the December 12 transcript without explaining why it would be relevant now when the government omitted it from the government's 65-page pre-contested hearing submission, which is reproduced at A27-A91 of the Appendix.

The government then banks on the December 12 transcript citations throughout its Grade A violation arguments at G27-G28, G30, and G32, and it further references the transcript at G39-G40. The government's 65-page evidence submission, however, acknowledged this Court has caselaw on the government's pursuit of supervised release revocation based on previous testimony. A28 (citing *United States v. Frederickson*, 988 F.3d 76 (1st Cir. 2021)). The government then made its limited evidentiary intentions explicit in relation to its six exhibits: "Attached as Exhibits 1 through 6," wrote government revocation counsel, "are portions of the suppression and trial transcripts that the United States submits [to] prove by a preponderance of

---

[3] Under Fed. R. Crim. P. 28(a)(6), the "statement of the case" should "set[]out the facts relevant to the issues submitted for review." The appellee's brief *need not* have a statement of the case "*unless* the appellee is dissatisfied with the appellant's statement." Fed. R. Crim. P. 28(b) (emphasis added). Here, the government has no cause for such dissatisfaction as to what "facts [are] relevant" to the appeal since the government, over the 23 months it had to prepare for the contested hearing, elected not to introduce any evidence beyond its six exhibits. *See* A22-A24 (unsworn Feb. 15, 2023 motion to revoke); A92-A148 (transcript of Jan. 14, 2025 contested revocation hearing).

the evidence the allegations made by the USPO in ECF No. 118." A29 (non-pertinent footnote omitted).

*Fredrickson*, in turn, cites the familiar standard for new-offense-based revocation proceedings, a standard that depends on the presentation of evidence by the party prosecuting the violation allegations: "To prove" a person on supervision "violated the terms of his supervised release, the government" must "show by a preponderance of *the evidence* that he committed a crime while on supervised release." *Frederickson*, 988 F.3d at 85 (citation omitted) (emphasis added).

While Mr. Fernández presented a witness at the final hearing, the government, unlike in *Fredrickson*, elected not to supply any additional evidence, aside from its transcript excerpts, at the final revocation. In *Fredrickson*, in contrast, "the government supplemented its evidence with two additional witnesses," so "in recounting the facts," this Court "rel[ied] heavily on memorialized trial testimony as proffered by the parties and supplemented by the government at the revocation hearing." *Id.* at 80. Similarly, in original sentencing proceedings, reviewing courts "cull the facts from the plea colloquy, the presentence investigation report (PSI Report), and the transcript of the sentencing hearing." *United States v. Cruz*, 120 F.3d 1, 2 (1st Cir. 1997) (en banc) (Selya, J.) (citations omitted).

This is not to say that, during district proceedings, a court may never rely on transcripts from other hearings: For example, this Court observed that, "for sentencing purposes[,] the court may rely upon evidence adduced at a coconspirator's trial as long as the defendant receives notice prior to its use and has the opportunity to challenge its reliability." *Cruz*, 120 F.3d at 2. (footnote omitted).

Here, however, the government demonstrated its awareness of the notice-and-opportunity rule when it made clear precisely what outside hearing evidence it was presenting, as the government assured the court and Mr. Fernández that its submission at A27-A91 was the only material "submit[ted] [to] prove by a preponderance of the evidence the allegations made by" the probation officer. A29.

Making its intentions clearer, the government's exhibits highlighted portions of transcript text it wished to rely on across its submission.

The government was of course also aware that "the party presentation principle" "teaches that, in our adversary system, courts 'rely on the parties to frame the issues for decision' while the courts assume 'the role of neutral arbiter of matters the parties present.'" *United States v. Chéveres-Morales*, 83 F.4th 34, 42 (1st Cir. 2023) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)); *see generally United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020).

Since these were revocation proceedings, the government, the defense, and the Court all understood that the violations would be adjudicated by a "neutral and detached" arbiter. *Martineau v. Perrin*, 601 F.2d 1201, 1205 (1st Cir. 1979) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). In such proceedings, whether for finding a violation or imposing a sentence, all facts adduced at the proceeding had to bear "sufficient indicia of reliability to support [their] probable accuracy." *United States v. García-Oquendo*, 144 F.4th 66, 76 (1st Cir. 2025) (citations omitted). After all, "the Due Process Clause of the Fifth Amendment secures … the right of criminal defendants to fundamental fairness in the proceedings that are brought against them." *Id.* (citations and quotation marks omitted); *see also* Fed. R. Crim. P. 32.1(b)(2) (requiring at final hearing, inter alia, "disclosure of the evidence against the person," "an opportunity to appear, present evidence, and question any adverse witness," the right to counsel, and "an opportunity to make a statement"). Finally, and more generally, this Court has noted that "timely presentation of … claims to the district court allows full development of the factual record." *United States v. Crooker*, 688 F.3d 1, 10 (1st Cir. 2012).

When the government elects not to develop an issue at one stage of litigation only to later convert the undeveloped issue "into a costly trap for an unwary defendant," this Court has observed that such conduct, if allowed to stand, "would put

the judicial system in a poor light." *Chéveres-Morales*, 83 F.4th at 44. Hence, as the late Judge Selya warned, government "[s]andbagging is not in fashion in this [C]ircuit." *Id.*

In conflict with the above authorities, the government seeks affirmance based on a selective interpretation of a transcript it chose not present below and the district court chose not to reference or even acknowledge reading. *See* G27-G28, G30, G32, G39-G40. It's brief references the doctrine that a reviewing court "may affirm on any grounds made apparent by the record." G24 n.4. The brief's untenable scaffolding in place, the government proceeds to allege that what the court was silently doing during in its pronouncement was following some similar words an agent witness said in the December 12 testimony. G27 n.6 (citing pp. 43-45 and 50-52 of the December 12 transcript).

Yet, since due process evidentiary standards apply, as did party presentation below, and the primordial parameters of the appellate review here, the December 12-trascript-reliance theory amounts to unacceptable speculation and conjecture.

**b. And since the government's selective view of the December 12 transcript does not point to reliable evidence, this Court can't affirm under the affirm-on-any-basis-apparent-from-the-record doctrine.**

Nor would the transcript, if introduced or noticed in advance, have ever withstood indicia-of-reliability analysis had the government sought to rely on it in district court. *See García-Oquendo*, 144 F.4th at 76.

This lack of reliability underscores why the December 12 transcript does not provide a new basis for affirmance that's "apparent from the record." The district court's machine gun mens rea cannot be apparent from the record of the December 12 testimony without considering that evidence as a whole and testing its reliability.

Indeed, we see numerous infirmities had the government sought to rely on it at the hearing. Take the government's claim that the rifle had an "obvious" and "visible" firing switch. G30. This was not an argument raised by the government below or supported by the transcripts the government actually submitted.

Nor does the totality of the December 12 transcript support the government's conjecture of an obvious and visible automatic fire mechanism. While the expert at one point said he'd seen a small line on the rifle that's used to change the firing mode, it was not obvious where that or the "autosear" pin were. The testifying agent said, "it's just got like little dash lines that you can tell. But it doesn't have anything in writing. It's just a little dash line that you can see." ECF No. 218 at 45. The agent

further clarified that that's the case of *that* rifle because "all of them are different." ECF No. 218 at 45.

When shown pictures of the rifle and asked whether the rifle's "autosear" pin was visible, the agent remarked that the "buttstock" "retractor" is blocking it. ECF No. 218 at 47. The agent later clarified on cross examination that the buttstock was "folded" when the firearm was removed from the bag. ECF No. 218 at 70. Only by "folding out that stock" can one see the rifle receiver "clearly." ECF No. 218 at 71.

When questioned on the visibility of the autosear pin, the agent acknowledged that visibility for him meant that you could see the side of the pin; otherwise, the pin "goes internally through the receiver." ECF No. 218 at 73. As to the size he saw, he equivocated, was it "five to seven millimeters"? ECF No. 218 at 74. "I cannot say." ECF No. 218 at 74. The agent also acknowledges that the picture presented at trial was "taken from a very close distance." ECF No. 218 at 71.

When discussing what can actually be seen from outside of the rifle, further clarity came during cross examination. The agent acknowledges there are other pins that don't have anything to do with automatic fire. ECF No. 218 at 75. The agent purported to identify the "trigger pin," but he became confused when asked to identify other pins and asked to state whether they also have anything to do with automatic fire. ECF No. 218 at 75-76. The pin the agent said was for the autosear, he

acknowledged, was "similar [to] the other pins." ECF No. 218 at 78. Toward the end of cross examination, the agent said that "[a]ny person that has used an automatic weapon and has knowledge about it could tell this, that it's an automatic weapon, by looking at the pin. And it gives you an indication, but you still have to verify that the sear is still installed." ECF No. 218 at 78. This is not a defensible explanation for what the judge chose not to explain below in terms how the single pin end among various pins on the rifle could be "obvious" and "visible."

Finally, the government's brief leaves out what happened once the agent was shown actual pictures of the firearm when it was fully assembled with the buttstock folded in. ECF No. 218 at 81-82. Defense Exhibit OO was a photograph of the rifle after arresting agents removed it from the backpack. ADR1. Government Exhibit 2, also taken after arrest, showed the rifle protruding from the backpack with the buttstock folded in. ADR2.

Could the agent see the automatic fire mechanism in either photograph shown time during his under-oath testimony? The answer: "Not in plain view, sir." ECF No. 218 at 82.

Returning to the applicable legal framework, this case saw a hearing where the government didn't ask the court to rely on the December 12 transcript and the court neither said ahead of time that it would rely on it nor said afterwards that it had relied

on it. A27-A86. When Mr. Fernández made his decision not to testify, and counsel decided not to introduce additional evidence regarding the lack of machine gun knowledge, they did so with the understanding that the government's controversial theory on the December 12 transcript was not at issue in the proceedings.

Indeed, given the circumstances, it would have been an error of law if the court had—given the government's election not to present it—cherrypicked from the transcript in the way the government's brief proposes. Yet, as the government would have it, the district court's statement about something being visible and obvious comes from early in the agent's testimony when he was looking at close-up images of the rifle while it was disassembled and had the buttstock folded out. G27; G27 n.6 (saying the court was relying on ECF No. 218 at 43-45, 50-52). Thus, the court would have been irrationally selecting evidence that was unreliable and would have been disputed. And it would have violated Rule 32.1 to rely on separate evidence that was never presented, tested, or even debated.

### c. Utilizing the never-presented December 12 transcript on appeal would promote unsound policy, undermine separation of powers, and undermine fairness choices by district court prosecutors.

To allow affirmance based on the new-on-appeal reliance on a portion of a transcript not made part of the revocation would foment unsound policy, undermine

the separation of power, and discourage government discretion for purposes of fairness.

Given the government's unsuccessful attempt at a trial alleging the same knowing automatic gun possession crime, its experience with a nearly two-year investigative period, and its desire to obtain the maximum statutory sentence, the government had strategic reasons to omit the December 12 transcript from its presentation at the contested hearing. This includes the fact that a reasonable revocation prosecutor may not have thought the transcript citations used by the government's brief could reasonably be believed to be true, at least for the proposition that the gun contained an obvious and visible modification making it a machine gun. As this Court has noted, attorneys "should not affirmatively misstate the material facts at sentencing." *United States v. Yeje-Cabrera*, 430 F.3d 1, 27-28 (1st Cir. 2005) (citation omitted). Beyond avoiding an un-truth by leaving out the December 12 transcript, caselaw allows government counsel broad discretion in how they "handle unclear or less provable facts." *Id.* at 28 (citation omitted). "Where facts are unclear or unascertainable, the parties may agree on some form of them without further justification or explanation to the court." *Id.* (citation and quotation marks omitted). The government therefore was within its right to determine that certain facts in the December 12 transcript were either not reliable, "unclear," or "less provable," such that

the entire transcript shouldn't enter the revocation proceedings. Mr. Fernández, in light of applicable law, was also within his right to accept the government's submission choices at face value and proceed accordingly with concern the government would turn silence around never-presented materials "into a costly trap." *Chéveres-Morales*, 83 F.4th at 44.

But that's not the only strategic or fairness-based decision faced by government revocation counsel. Government counsel below would have also known that the December 12 transcript depended on testimony about close-up photos of the rifle after it was disassembled, for the agent tried but couldn't make the same representation about photos of the rifle in its assembled state. *See* ECF No. 218 at 82. Thus, by not introducing the transcript, government revocation counsel avoided the court's exposure to presentation of the same agent's later testimony that, in its assembled and folded state, the rifle's automatic-fire mechanism was "[n]ot in plain view." ECF No. 218 at 82. Further, by not raising the controversial December 12 testimony, the government avoided the presentation of any of the exhibits showing the firearm *as it was found by police* before the rifle had been disassembled and its buttstock had been folded out; likewise, it avoided the showing of testimony in which the agent was asked to look at various pins on the rifle which he could not identify. *See supra* pp. 9-10.

In addition, by not raising the controversial December 12 transcript, the government prevented the admission of testimony where the agent specified just what type of person would have noticed any component was related to automatic fire: such component would have been visible to "[a]ny person that has used an automatic weapon and has knowledge about it," yet "you still have to verify that the sear is still installed." ECF No. 218 at 78.

Moreover, the sovereign U.S. government should be understood have independently weighed fairness considerations in deciding not to introduce certain portions of disputed trial evidence like select testimony in the December 12 transcript. For example, the trial dismissal order followed the December 12 hearing but came before government counsel rested from presentation of their case. It followed that the trial saw no presentation of any defense witnesses and no summation in relation to the December 12 testimony. Government counsel, therefore, who selected the government's revocation hearing evidence, had fairness reasons for leaving out the most controversial and least clear testimony from that hearing.

Further, since a revocation hearing is a fact-finding evidentiary procedure, the government would have been aware that Mr. Fernández would make his decision to testify or not testify after observing the government's presentation of its case. He

decided not testify after the government chose only to represent that it sought revocation based on its six exhibits. *See* Fed. R. Crim. P. 32.1(b)(2) (person facing revocation has "opportunity to make a statement"). In sum, any claims relying on the December 12 transcript must be rejected.

### d. The government's remaining Grade A-classification arguments are meritless.

Beyond the government's unviable December 12-transcript-based arguments, the remainder of the government brief's mens rea arguments lack support. These include a few additional inferences, argued at G27-G28, based on Mr. Fernández's identification card being near the firearm along with the presence of a magazine with 16 rounds in it and other loose rounds of ammunition. These, however, presume something about the gun made it obviously and visibly a modified machine gun, which is what this Court observed in cases like *Matta-Quiñones*, where "modifications to the [seized] pistols were externally visible." *See United States v. Matta-Quiñones*, 140 F.4th 1, 10 (1st Cir. 2025) (footnote omitted). Here, the agent ultimately never claimed a visible *modification* to the single rifle. Indeed, the government acknowledges that the agent couldn't ever tell if there was any modification ever done to the rifle. G31-G32 n.8. The government brief's remaining suggestion of inferences to prop up specific knowledge in this case were already addressed in the opening brief, which explains why the evidence is in line with that seen in *Nieves-*

*Castaño* and in conflict with the visible-modification cases like *Pérez-Greaux* and *Matta-Quiñones*. AB7-AB15.

As such, since the actual evidence adduced at trial didn't establish automatic gun knowledge, the district court's Grade A determination constitutes reversible error.

**B.    The government's argument that it should have been excused from proving machine-gun mens rea lacks merit.**

As spelled out in the opening brief, the requirement to show automatic gun knowledge follows jurisprudence on the National Firearms Act ("NFA") chapter and verse. As such, it was no surprise in district court that government revocation counsel had no dispute over whether the government had to prove Mr. Fernández knew the folded-up gun had an automatic mode. And this was after government counsel had almost two years to think through the elements of the violation the government wished to pursue.

In the response brief, however, a new idea emerged, which alleges that revocation based on an NFA-defined machine gun "does not include a mens rea requirement that Fernández knowingly possessed a firearm amounting to a machinegun." G23. This argument cannot be raised due to waiver or forfeiture. In any case, it lacks merit.

### 1. The government's new-on-appeal mens rea argument is waived or forfeited.

As we see from this Court's caselaw, appellate claims not timely raised in district court are waived or forfeited. *See United States v. Galindo-Serrano*, 925 F.3d 40, 49 (1st Cir. 2019). Forfeiture and waiver are two ways in which a party loses the ability to raise those unraised arguments. *Lawless v. Town of Freetown*, 63 F.4th 61, 65 n.2 (1st Cir. 2023). Whereas "forfeiture is the failure to make the timely assertion of a right[,] waiver is the intentional relinquishment or abandonment of a known right." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) (cleaned up).

In district court, the government made no claim that a mens rea element was absent from what it had to prove. A92-A148. It then raised no counterargument regarding the presence of mens rea in the statutory NFA offense as incorporated into Chapter 7 of the Sentencing Guidelines. This mens rea element was a core assumption of the defense and the revocation court. As such, the government's arguments were waived or forfeited below.

What is more, enforcing waiver against the government is appropriate here as procedural rules "ensure fairness by providing litigants with a level playing field." *Reyes-García v. Rodríguez & Del Valle, Inc.*, 82 F.3d 11, 14 (1st Cir. 1996). Waiver plays an essential role securing fair, orderly process and the efficient settling of material facts by allowing district courts "to narrow the issues and concentrate scarce

judicial resources on genuinely contested matters," which is why, "when a trial court makes a reasoned decision, it is unfair to allow a party to subvert that decision by resurrecting a waived claim." *United States v. Valdez*, 88 F.4th 334, 343 (1st Cir. 2023) (citations, internal quotation marks omitted). Here, the government allowed the court to proceed under the core assumption that roughly 30 years of NFA-possession precedent applies in Chapter 7, such that NFA machine gun possession offenses require the government "to prove" that the accused "knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." *See Staples v. United States*, 511 U.S. 600, 602 (1994), *accord United States v. Nieves-Castaño*, 480 F.3d 597, 599-600 (1st Cir. 2007). And the government never tried to place this new argument "'squarely and distinctly' before the district court." *United States v. Nieves-Meléndez*, 58 F.4th 569, 579 (1st Cir. 2023).

Yet, Appellee also waives the new no-mens-rea-requirement argument on appeal by alleging a court error in assessing the NFA elements in the most "perfunctory manner" without "effort at developed argumentation." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Consider for example the government's claimed support for a no-mens-rea-requiring NFA violation, which is *Martínez-Bristol* preceded by a "*Cf.*" G23 (citing *United States v. Martínez-Bristol*, 133 F.4th 149, 151-52 (1st Cir. 2025)). *Martínez-Bristol*, though, falls short of meriting even a

"*Cf.*," as the government knows from its litigation in that case. There, the government's brief argued the following in relation to Martínez-Bristol's argument that mens rea had not been shown below:

> Now, on appeal, he adds that argument [that the gun wasn't shown to be a machine gun] by contending that there was nothing in the firearms case record showing that *he knew* it was an automatic firearm (AB 19). Because his argument that the knowledge was not established is new on appeal it is subject to plain error and waived for failure to brief plain error."

Gov't Brief in *Martínez-Bristol*, 2024 WL 1270449 at 25. Facing the opportunity to contest the presence of a mens rea element in the NFA statute as incorporated into Chapter 7 of the Guidelines, the government, in its March 2024 brief, was silent. Its only fallback was that, if "Martínez [had] argued knowledge below, the government would have argued" the court could infer such knowledge. Gov't Brief at 28 n.3.

"*Cf.*" is used to cite an authority supporting the writer's proposition "*by analogy.*" Peter W. Martin, INTRODUCTION TO BASIC LEGAL CITATION 151 (online ed. 2020) (emphasis added), *available at* https://www.law.cornell.edu/citation/basic-legal-citation.pdf. Here, *Martínez-Bristol* provides no support by analogy otherwise. Not from the government's arguments. And not from the *Martínez-Bristol* opinion, where this Court noted that the defendant's supervision term was revoked after he pleaded guilty to a "new indictment as to [a] felon-in-possession." *Martinez-Bristol*,

133 F.4th at 150. The opinion went on to describe how the Rule 32 process in a new criminal case saw Martínez-Bristol accepting "possession of 'one Glock pistol ... that had a visible machinegun conversion device, commonly known as a chip, that was attached to the same.' The district court asked Martínez if the sections of the presentence report describing the offense were correct, and Martínez responded that they were." *Id.* at 151.

Thus, rather than address the mens rea element or any element of an NFA-incorporated violation, the *Martínez-Bristol* panel opinion, addressed a single issue in relation to the revocation: whether Martínez-Bristol's "due process and limited confrontation rights were violated." *Id.* at 152. The panel held they were not since Martínez didn't object to PSR and sentencing proceedings where he accepted the gun was fully automatic. *Id.* The government's fallback, that it *would have argued* he had knowledge, actual presumed the mens rea element it now argues does not exist. Had the government wished to reexamine its concession the element from *Martínez-Bristol*, the time to speak on the elements of the offense was in district court. But it remained silent. Its arguments on appeal are waived and it's now failed to develop any meritorious argument here.

## 2. As in § 5861 and § 924(c)(1)(B)(ii), the possession of an NFA machine gun under § 7B1.1(a)(1) requires that a person know the gun is a machine gun.

In any case, the government does not offer any reason why *Staples*' NFA jurisprudence is not incorporated into § 7B1.1(a)(1). In *Staples*, the Court held that knowledge that a weapon is automatic within meaning of 26 U.S.C. § 5845 was a necessary element of violation of the 26 U.S.C. § 5861 offense Staples was convicted of. *Staples v. United States*, 511 U.S. 600, 619 (1994). The *Staples* opinion rejected each and every reason offered by the government to claim that Congress had somehow silently dispensed with the specific automatic-fire mens rea on the § 5845 definition.

For the last 31 years, *Staples* has lived side-by-side with the Chapter 7 framework for incorporating § 5845 possession into the most severe category of violations, a category here that ranged from 30 to 37 months where general unlawful gun possession would have had an 8 to 14 months range. The Commission has been aware, therefore, of *Staples*' observation that a severe penalty is a factor tending to suggest that a rule-making body did not intend to eliminate a mens rea requirement. *See* 511 U.S. at 616-19. As the Court put it, the "potentially harsh penalty attached to violation of" the machine gun prohibition statute "confirms our reading of the [NFA]. Historically, the penalty imposed under a statute has been a significant consideration

in determining whether the statute should be construed as dispensing with mens rea." *Id.* at 616.

A fact that more than trebles a guideline lower end and more than doubles the higher end, should be a significant consideration that the drafters of § 7B1.1(a)(1) would not have dispensed with mens rea. *Cf. United States v. O'Brien*, 560 U.S. 218, 228-29 (2010) (emphasizing the potential unfairness that could result from classifying the machinegun provision in 18 U.S.C. § 924(c)(1)(B)(ii) as a sentencing factor in part due "drastic, sixfold increase" in the severity of the sentence from the five-year minimum to the thirty-year minimum for a machinegun).

Indeed, even the government's advocacy presumes a meaningful impact of knowledge the gun was automatic in that it argued the possession of a machine gun after a past semiautomatic gun possession was an "escalation in behavior." A134-A35. Such an argument would lack meaning if that escalation could have happened without Mr. Fernández being aware of it.

To be sure, like § 5861 and § 924(c)(1)(B)(ii), the NFA-referencing Grade A guideline does not expressly mention mens rea. As the Supreme Court has stated, however, "[t]he fact that the statute does not specify any required mental state . . . does not mean that none exists." *Elonis v. United States*, 575 U.S. 723, 734 (2015). Courts have had no difficulty extrapolating mens jurisprudence to guidelines that

reference offenses. *See, e.g.*, *United States v. Wickware*, 136 F.4th 591, 595 n.2 (5th Cir. 2025) (extrapolating that guidelines robbery definition requires mens rea).

As such, to launch an NFA machine gun-possession violation to Grade A, the government must prove knowledge just as in the NFA statutory offense.

## II. Response to Government Brief's Denial of Procedural Error.

### Introduction

As to Argument II, the government does not meaningfully counter any of Mr. Fernández's arguments that the sentence was procedurally infirm based on reliance on unreliable, outside-the-record evidence and a failure to explain. It claims, however, that there was either no *Esteras* error or that this Court's jurisprudence on futile objections has been implicitly overruled by the Supreme Court. These arguments lack merit. And even if defendants are now required to lodge even futile objections—as a pre-*Esteras* objection would have been—the record shows that the court plainly erred in relying on § 3553(a)(2)(A) retribution purposes.

### A. The government claims the court's five-year upwardly variant statutory maximum sentence was free of *Esteras* error, but that claim lacks merit.

As to the error Mr. Fernández raises under *Esteras v. United States*, 145 S. Ct. 2031, 2040 (2025), that courts can no longer "consider § 3553(a)(2)(A) when revoking supervised release," the government essentially argues the district court wasn't really considering the seriousness of the instant offense but was instead

thinking only about the seriousness of the new violation, which was not expressly proscribed by a majority of justices in *Esteras*. G47. Most simply, though, the government ignores that fact that the *Esteras* majority opinion does not contradict the concurrence's holding. *See* 145 S. Ct. at 2047 (Sotomayor, J., concurring) ("[W]hen a court considers whether a supervised-release violation warrants revocation and reimprisonment … , it must look only to the forward-looking ends mentioned in the statute. As to either a supervised-release violation or the underlying offense, the backward-looking end of retribution is out of bounds.").

But in any case, the record shows that the district court, "by unmistakable implication," *id.* at 2045, relied on § 3553(a)(2)(A) factors. As the opening brief notes, the government asked for the maximum revocation sentence to punish an "escalation in behavior …. to protect the public from future offenses from this Defendant." A135. A court wouldn't be able to contemplate escalating offense severity without considering the seriousness of the offense that started or continued the chain of escalation. And the court assured interlocutors that it had contemplated government counsels arguments "and the seriousness of Mr. Fernández'[s] violation." A140. There's no reason to ready the record as isolating seriousness to only the subject offense when the government and the court looked at it as an escalation from the instant offense and the government asked the court to focus on "the seriousness of

*this offense*" without specifying which offense and focusing on the relative serious-ness of escalating offenses. A135 (emphasis added). The government's look back to the offense it considered part of "escalating conduct" advocated precisely for the "*backward-looking* purpose of retribution" that is now off-limits. *Esteras*, 145 S. Ct. at 2035 (italics in original).

> **B.** **This Court need not insist that a defendant make a futile objection to review a sentencing error for abuse of discretion, but if it does, the plain *Esteras* error warrants vacatur.**

Nor is the government's objection to the solid-wall-of-circuit-court-authority exception persuasive. *See Martone v. United States*, 435 F.2d 609, 611 (1st Cir. 1970) (citation and quotation marks omitted). To apparently challenge the *Martone* rule, the government's brief, at G42, argues under *Greer v. United States*, 593 U.S. 503, 511 (2021), that Mr. Fernández needed to object to sentencing for retribution even though objection would have been futile. *See also United States v. López-Peña*, 912 F.2d 1542, 1549 (1st Cir. 1989) (restating rule that objection is not required where "solid wall" of authority would render objecting "like shouting into a gale-force wind").

Here, the government does not deny that objection would have been futile and it does not contend that cases like *Martone* and *López-Peña* are no longer binding. It may be that *Greer* did not identify a futility exception in the plain text of the Federal

Rules of Criminal Procedure 52, but *Greer* did not strip this Court and other circuit courts of their ability to review issues on appeal when it's in the interest of justice and judicial economy to do so. For example, a similar rule has long been applied in the Tenth Circuit. *See Asbill v. Hous. Auth. of Choctaw Nation*, 726 F.2d 1499, 1502 (10th Cir. 1984) (further objection in district court in civil matter not warranted where "it was plain that further objection would have been unavailing."). But despite the apparent categorical pronouncement in *Greer*, the Tenth Circuit recently elected not to answer how *Greer* affects that court's futility exception. *See United States v. Mayfield*, 134 F.4th 1101, 1105 n.4 (10th Cir. 2025). Here, the government reads too much into *Greer*, which at most ruled the exception did not apply where a defendant had the opportunity to object but did not out of a belief his contemporary objection would be denied. 593 U.S. at 512. *Greer* addressed Rule 52 review where there was a lack of contemporary objection to jury instructions, long before judgment pronounced or entered. Here, though, the improper-factor-reliance error arose when the court pronounced judgment such that objection would have been futile not just because this Court had already ruled contrary to *Esteras* but also because under Rule 51, Mr. Fernández did "not have an opportunity to object." Fed. R. Crim. P. 51; *cf.*

*United States v. Rodríguez*, 919 F.3d 629, 634-35 (1st Cir. 2019) ("Since this statement was part and parcel of the court's final decision, the defendant had no realistic opportunity to object before the entry of judgment.").

Regardless of this Court's ruling on futility, there was clear error and obvious error (violation of *Esteras*'s prohibition through the implication of reliance on § 3553(a)(2)(A)); it affected substantial rights (playing a part in colossal upward variance following, for example, the government's argument on the "seriousness" of escalating offense conduct); and, under the circumstances of this case, allowing the revocation to stand would seriously impair the fairness and integrity of judicial proceedings. *See Rosales-Mireles v. United States*, 585 U.S. 129, 141 (2018).

## CONCLUSION

For the reasons developed and examined here and in the opening brief, this Court should vacate the upwardly variant revocation sentence and remand to another judicial officer for resentencing.

**RESPECTFULLY SUBMITTED.**

October 17, 2025

**RACHEL BRILL**
Federal Public Defender
District of Puerto Rico

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appellate Division

**S/KEVIN E. LERMAN**
Assistant Federal Public Defender
First Circuit Bar No. 1194361
241 F.D. Roosevelt Ave.
San Juan, Puerto Rico 00918-2441
(787) 281-4922
Kevin_Lerman@fd.org

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) by containing 6,090 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This is less than the 6,500-word limit.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface in Microsoft Word utilizing 14-point Equity font.

October 17, 2025

s/KEVIN E. LERMAN
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I CERTIFY that a true and exact copy of this APPELLANT'S BRIEF was filed with the Clerk of Court on October 17, 2025, using the CM/ECF system which will send notification to all parties of record, including counsel for the appellee.

October 17, 2025

s/KEVIN E. LERMAN
Assistant Federal Public Defender

# United States Court of Appeals
# for the First Circuit

UNITED STATES,
*Appellee,*

v.

DIEGO FERNÁNDEZ-SANTOS,
*Defendant - Appellant.*

On Appeal from the United States District Court
for the District of Puerto Rico
D. Ct. No. 14-cr-225-FAB
Hon. Francisco A. Besosa, U.S. Senior District Judge

## ADDENDUM TO APPELLANT'S REPLY BRIEF

RACHEL BRILL
Federal Public Defender
District of Puerto Rico
241 F.D. Roosevelt Ave.
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Kevin_Lerman@fd.org

FRANCO L. PÉREZ-REDONDO
Assistant Federal Public Defender
Supervisor, Appeals Section

KEVIN E. LERMAN
Assistant Federal Public Defender

*Attorneys for Defendant-Appellant*
DIEGO FERNÁNDEZ-SANTOS

# Contents

**Trial Exhibit OO (Photograph of Rifle as Confiscated),**
   D.P.R. No. 23-cr-63-FAB (Dec. 12, 2024) ............................................................. 1

**Trial Exhibit G2 (Photograph of Rifle as Confiscated),**
   D.P.R. No. 23-cr-63-FAB (Dec. 12, 2024) ............................................................. 2



DEFENDANT'S
EXHIBIT
99

Addendum 1



GOVERNMENT EXHIBIT
MIG
2
23-063 (FAB)    12/10/2024

Addendum 2